378 A.2d 800

**COMMONWEALTH of Pennsylvania**

v.

**Elbert Spencer CHERRY, Appellant.**

Supreme Court of Pennsylvania.

Argued June 23, 1975.

Decided Oct. 7, 1977.

Jerome E. Furman, Philadelphia, for appellant.

F. Emmett Fitzpatrick, Dist. Atty., Steven H. Goldblatt, Asst. Dist. Atty., Chief, Appeals Div., Bonnie Leadbetter, Philadelphia, for appellee.

Before JONES, C. J., and EAGEN, O'BRIEN, ROBERTS, POMEROY, NIX and MANDERINO, JJ.

## OPINION OF THE COURT

ROBERTS, Justice.

Appellant Elbert Spencer Cherry was tried before a jury and convicted of murder of the first degree, attempted aggravated robbery, and conspiracy in connection with the April 22, 1971 slaying of Morrell Reed. In this appeal, appellant contends that statements of the prosecutor made during closing argument to the jury were improper and deprived him of a fair trial.[1] We agree, reverse judgment of sentence and grant appellant a new trial.[2]

---

1. We hear this appeal pursuant to the Appellate Court Jurisdiction Act of 1970, Act of July 31, 1970, P.L. 673, art. II, § 202(1), 17 P.S. § 211.202(1) (Supp.1977).

I

Mrs. Barbara Calloway Roby, the principal witness for the Commonwealth, testified that Morrell Reed and she were visiting Smitty's Bar on the night of the killing. Mrs. Roby testified that appellant entered the bar and sought to buy drugs from them. Accepting this offer, Morrell Reed and she left the bar with appellant to make the sale.

Morrell Reed, Mrs. Roby, and appellant entered a station wagon parked outside the bar. The station wagon, occupied by several persons who had accompanied appellant to the bar, was then driven away.

Mrs. Roby testified that the driver stopped the station wagon, following which appellant and another person in the vehicle, Byron Edwards, said to Morrell Reed and her, "This is a stickup." According to Mrs. Roby, appellant then told another of his original companions, "Brown Eyes," to search Mrs. Roby. Mrs. Roby testified that, after she protested, she was punched by David Cherry and David Cherry then shot Morrell Reed while Reed was trying to restrain him. Reed died shortly thereafter.

On cross-examination, defense counsel attempted to show that Mrs. Roby's testimony was inconsistent with statements she made to the police subsequent to the crime. In closing argument, defense counsel told the jury that he perceived a total of nineteen inconsistencies in her trial testimony, detailing each of them. Included in counsel's list of inconsistent statements were Mrs. Roby's account of how long appel-

---

**2.** Appellant argues that the evidence is insufficient to sustain any of the three verdicts. Having viewed all of the evidence admitted at trial in the light most favorable to the Commonwealth, see *Commonwealth v. Kichline*, 468 Pa. 265, 271, 361 A.2d 282, 283 (1976); *Commonwealth v. Bastone*, 466 Pa. 548, 552, 353 A.2d 827, 829 (1976), we conclude that the evidence is sufficient.

Appellant also argues that the failure of the trial court to charge the jury on voluntary manslaughter as requested by appellant denied appellant the due process of law provided by the fourteenth amendment to the Constitution of the United States. Our disposition makes it unnecessary to reach this issue.

lant was in the bar, how she obtained the drugs in question, where she kept the drugs, who said "This is a stickup," and how much later Morrell Reed was shot.

In closing argument the prosecutor responded to these attacks on the credibility of Mrs. Roby:

"There is going to be a day—I shouldn't say 'There is going to be a day'—there might arise a day, hopefully it won't, some of you might be a victim of a crime, maybe a robbery, a burglary, God forbid a rape. You are going to be on the stand some day if even one is apprehended. Maybe it will take two years, maybe a year or six months; and you give a formal statement. And you may testify against one defendant and a year later maybe have to testify against another defendant.

"And what is going to happen when you get on the stand and the defense attorney tells the jury: 'Look at all the inconsistencies in this witness's testimony. You can't believe her.' What are you going to feel like? You are going to feel like two cents, even though you honestly tried to tell the truth. And you are not going to memorize your formal statement, and you are not going to memorize your prior testimony. But you will be up there, ladies and gentlemen, if the time ever comes, doing your best to tell the truth.

"You judge the credibility of Barbara Calloway, just put yourself in the place of any other victim, which could be you some day, we hope not . . . . ."

The defense made a timely request for a curative instruction which was denied.[3]

The prosecutor also argued to the jury:

3. The prosecutor's closing argument was the last order of business on the second day of trial. The request for a curative instruction came at the beginning of the third day of trial, before the judge instructed the jury. Because the closing argument was recorded and its contents were not disputed, the trial court had adequate opportunity to correct the effect of the argument of the prosecutor. The request was therefore timely. *Commonwealth v. Gilman,* 470 Pa. 179, 185–87, 368 A.2d 253, 256–57 (1977); *Commonwealth v. Adkins,* 468 Pa. 465, 364 A.2d 287 (1976).

"Please tell the people of Philadelphia that where one, even though he doesn't pull the trigger, takes part in and knows ahead of time that there is going to be a robbery, knows that at least one of the men has a gun, knows all that, goes along with it, tell everybody by your verdict that you are not going to put up with shootings on the street like the wild west."

The court overruled appellant's immediate objection.

## II

■ In advocating the cause for this Commonwealth, prosecutors are to seek justice, not only convictions. *Commonwealth v. Gilman,* 470 Pa. 179, 368 A.2d 253 (1977); *Commonwealth v. Collins,* 462 Pa. 495, 341 A.2d 492 (1975); see ABA Project on Standards for Criminal Justice, Standards Relating to the Prosecution Function and the Defense Function § 1.1 (Approved Draft, 1971) [hereinafter cited as ABA Standards]; Pennsylvania Supreme Court Code of Professional Responsibility EC 7–13 (1974). This obligation to seek justice includes the responsibility to assure that the defendant receives a fair and impartial trial. See *Commonwealth v. Joyner,* 469 Pa. 333, 365 A.2d 1233 (1976); *Commonwealth v. Toth,* 455 Pa. 154, 314 A.2d 275 (1974); ABA Standards § 1.1, commentary at 44.

■ This Court has established that the conduct of the prosecutor at closing argument is circumscribed by the concern for the right of a defendant to a fair and impartial trial. We have held that a prosecutor's expression of personal opinion regarding a defendant's guilt,[4] credibility,[5] or strategy[6] is prejudicial and amounts to reversible error. We

4. E.g., *Commonwealth v. Gilman,* 470 Pa. 179, 368 A.2d 253 (1977); *Commonwealth v. Cronin,* 464 Pa. 138, 346 A.2d 59 (1975).

5. E.g., *Commonwealth v. Joyner,* 469 Pa. 333, 365 A.2d 1233 (1976); *Commonwealth v. Collins,* 462 Pa. 495, 341 A.2d 492 (1975).

6. *Commonwealth v. Collins, supra.*

have also held that improper statements of the evidence [7] and references to what the victim might have said [8] are improper.

Moreover, our cases emphasize that the prosecutor must not seek to divert the jury from its duty to decide impartially the facts of the case before it. As Mr. Justice Nix has stated for this Court, "[t]he determination of guilt must *not* be the product of fear or vengeance but rather intellectually compelled after a disinterested, impartial and fair assessment of the testimony that has been presented." *Commonwealth v. Harvell,* 458 Pa. 406, 411, 327 A.2d 27, 30 (1974). The jury must not be diverted by statements appealing to its emotions or which may lead the jury away from its responsibility to resolve the case on the basis of the facts presented. See *Commonwealth v. Gilman,* 470 Pa. 179, 368 A.2d 253 (1977); *Commonwealth v. Harvell,* 458 Pa. 406, 327 A.2d 27 (1974); *Commonwealth v. Lipscomb,* 455 Pa. 525, 317 A.2d 205 (1974).

·In defining impermissible conduct during closing argument, we have followed Section 5.8 of the ABA Standards. *Commonwealth v. Joyner,* 469 Pa. 333, 365 A.2d 1233 (1976); *Commonwealth v. Harvell,* 458 Pa. 406, 327 A.2d 27 (1976). Section 5.8 provides:

"Argument to the jury.

(a) The prosecutor may argue all reasonable inferences from evidence in the record. It is unprofessional conduct for the prosecutor intentionally to misstate the evidence or mislead the jury as to the inferences it may draw.

(b) It is unprofessional conduct for the prosecutor to express his personal belief or opinion as to the truth or falsity of any testimony or evidence or the guilt of the defendant.

(c) The prosecutor should not use arguments calculated to inflame the passions or prejudices of the jury.

7. E.g., *Commonwealth v. Joyner, supra; Commonwealth v. Toth,* 455 · Pa. 154, 314 A.2d 275 (1974).

8. E.g., *Commonwealth v. Harvell,* 458 Pa. 406, 327 A.2d 27 (1974); *Commonwealth v. Lipscomb,* 455 Pa. 525, 317 A.2d 205 (1974).

(d) The prosecutor should refrain from argument which would divert the jury from its duty to decide the case on the evidence, by injecting issues broader than the guilt or innocence of the accused under the controlling law, or by making predictions of the consequences of the jury's verdict."

The policy underlying this section and our decisions which follow it is that limitations are needed to check the possibility that jurors will give undue weight to the arguments of the prosecutor. The commentary to Section 5.8 points out:

"As the culmination of his efforts in the case, the prosecutor's argument is likely to have significant persuasive force with the jury. Accordingly, the scope of argument must be consistent with the evidence and marked by the fairness which should characterize all of the prosecutor's conduct. Prosecutorial conduct in argument is a matter of special concern because of the possibility that the jury will give special weight to the prosecutor's arguments, not only because of the prestige associated with his office, but also because of the fact-finding facilities presumably available to him. See *DiCarlo v. United States,* 6 F.2d 364 (1925); Note, 54 Colum.L.Rev. 946 (1954). 'If the state has a strong case, it is not necessary, and if it has a close case, such misconduct is gross injustice to the defendant.' *State v. Cyty,* 50 Nev. 256, 256 P. 793, 794 (1927). See also *DiCarlo v. United States, supra;* Cain, Sensational Prosecutions and Reversals, 7 Notre Dame Law. 1 (1931); Note, 6 Utah L.Rev. 108 (1958). Unfortunately, some prosecutors have permitted an excess of zeal for conviction or a fancy for exaggerated rhetoric to carry them beyond the permissible limits of argument. See, e.g., *Berger v. United States,* 295 U.S. 78 [, 55 S.Ct. 629, 79 L.Ed. 1314] (1935); *People v. Talle,* 111 Cal.App.2d 650, 245 P.2d 633 (1952); *Rowe v. Commonwealth,* 269 S.W.2d 247 (Ky.1954). Of course, a prosecutor must be free to present his arguments with logical force and vigor. 'But, while he may strike hard blows, he is not at liberty to strike foul ones.' *Berger v. United States,* 295 U.S. at 88 [, 55 S.Ct. 629]."

## III

The statement made by the prosecutor which asked the jurors to imagine themselves as victims improperly invoked the sympathy of the jurors for Mrs. Roby. The remarks suggested that the jury should render a verdict based on sympathy for the witness rather than the guilt or innocence of the accused. This appeal to the emotions encouraged the jurors to shift their inquiry away from the case before them, and thus prejudiced appellant.

The testimony of Mrs. Roby was an important part of the Commonwealth's case. She placed appellant at the scene of the crime and established appellant's participation in the attempted robbery. Consequently, appellant's case rested in large part on his ability to rebut the testimony of Mrs. Roby.

Appellant sought to discredit Mrs. Roby's testimony through cross-examination. Appellant reminded the jury at closing argument of the inconsistencies brought out on cross-examination, arguing that these inconsistencies made Mrs. Roby's testimony incredible.

The prosecutor responded by attempting to bolster Mrs. Roby's credibility. He pointed out that memories fade over time; such argument was proper.

The prosecutor exceeded the bounds of proper argument, however, when he sought to emphasize this point by telling the jurors that they too might be victims of a crime and thus could imagine the difficulty Mrs. Roby had in testifying. Asking the jurors to imagine their own memories fading in such a situation, and saying the jurors would feel like "two cents" upon having their credibility discredited, was an improper appeal to the sympathies of the jury. In effect, the prosecutor asked the jury to assume the witness told the truth, and to act out of sympathy for the witness, instead of performing its duty to assess the credibility of the witness. In asking for sympathy for the witness, the prosecutor also implied that appellant's legitimate exercise of his right to meet his witnesses face to face, Pa.Const.

art. I, § IX;[9] see U.S.Const. amends. VI, XIV, was improper. Such comments by the prosecutor are impermissible. Cf. *Griffin v. California*, 380 U.S. 609, 85 S.Ct. 1229, 14 L.Ed.2d 106 (1965) (prosecutor's comment on exercise of privilege against self-incrimination is constitutionally impermissible).

▮ The prosecutor went further. He asked the jury to tell the people of Philadelphia that "shootings on the street like the wild west" will not be tolerated. This argument was an invitation to the jurors to shift their inquiry from the guilt or innocence of appellant to the need to make an example of someone accused of participating in a public shooting. This appeal to the emotions of the jury was compounded by the prosecutor's statement that the jurors themselves might be the victims of crime—"burglary, robbery, God forbid a rape." Thus the prosecutor encouraged the jury to deliberate on an issue not before it, and decide the case on the basis of passion rather than reasoned evaluation of the evidence presented.

▮ The prosecutor's improper closing argument requires the grant of a new trial. In *Commonwealth v. Harvell*, 458 Pa. 406, 327 A.2d 27 (1974), the closing argument of the prosecutor included such statements as "[m]en are afraid to walk the streets themselves," "[p]eople don't want to go out at night," and "it might be you next time. It might be you." This Court held that such statements "divert[ed] the inquiry from the pursuit of truth" and invited the jury "to give vent to visceral and unreasoned responses." 458 Pa. at 411, 327 A.2d at 30. After finding that the

9. Article I, Section Nine of the Pennsylvania Constitution provides:
   "Rights of accused in criminal prosecutions
   In all criminal prosecutions the accused hath a right to be heard by himself and his counsel, to demand the nature and cause of the accusation against him, *to meet the witnesses face to face,* to have compulsory process for obtaining witnesses in his favor, and, in prosecutions by indictment or information, a speedy public trial by an impartial jury of the vicinage; he cannot be compelled to give evidence against himself, nor can he be deprived of his life, liberty, or property, unless by the judgment of his peers or the law of the land."
   (emphasis added)

conduct of the prosecutor did not meet the ABA Standards as set forth in Sections 5.8(c) and (d),[10] this Court found the statements were so prejudicial as to deprive the defendant of a fair trial.[11]

So too here, the prosecutor's statement that the jurors might be the victims of serious crime, and his argument to the jury asking them to "tell everybody by your verdict that you are not going to put up with shootings" deprived appellant of a fair trial. Instead of being able to review the entire testimony of Mrs. Roby in a neutral manner, the jury was put in a position to disregard, out of sympathy, the inconsistencies in her testimony pointed out by appellant. Instead of being allowed to consider the case of appellant, the jury was asked to issue a mandate to the community, a

**10.** Sections 5.8(c) and (d) of the ABA Standards provide:

"(c) The prosecutor should not use arguments calculated to inflame the passions or prejudices of the jury.

(d) The prosecutor should refrain from argument which would divert the jury from its duty to decide the case on the evidence, by injecting issues broader than the guilt or innocence of the accused under the controlling law, or by making predictions of the consequences of the jury's verdict."

**11.** Other jurisdictions have granted new trials because of closing arguments which ask the jury to decide a broader issue than the facts of the case before it. For example in *People v. Williams,* 65 Mich.App. 753, 238 N.W.2d 186 (1976), the jurors were told that they had an opportunity to reduce the drug traffic in the city in which an alleged drug offense was committed. The Michigan Court of Appeals found that the statement did not meet the ABA Standards as set forth in Section 5.8(d). In holding that the comments were reversible error, the court stated:

"by arguing that the jurors had an 'opportunity to [a]ffect the drug traffic in this city,' the prosecutor appealed to the jurors' fears and encouraged them to go outside the evidence and decide the case on the basis of their desire to alleviate the drug problem." 65 Mich.App. at 756, 238 N.W.2d at 188. Accord: *State v. Vickroy,* Iowa, 205 N.W.2d 748 (1973); *People v. Farrar,* 36 Mich.App. 294, 193 N.W.2d 363 (1971); *People v. Moore,* 26 A.D.2d 902, 274 N.Y. S.2d 518 (1966). See *State v. Kelley,* 209 Kan. 699, 498 P.2d 87 (1972) (jurors asked to convict defendant to prevent future lawlessness reversible error but for the failure to preserve issue properly); *Commonwealth v. MacDonald (No. 1),* Mass., 333 N.E.2d 189 (1975) (jurors asked to tell "bums and hoodlums" of South Boston that crime will not be tolerated found to be improper but cured by instruction from trial judge).

mandate which would tell other citizens that specific conduct would not be tolerated. These arguments "divert[ed] the inquiry" and invited "visceral and unreasoned" responses. *Commonwealth v. Harvell, supra,* 458 Pa. at 411, 327 A.2d at 30.[12]

Judgment of sentence reversed and new trial granted.

**12.** The *Commonwealth* further contends that the evidence of appellant's guilt is so overwhelming that the closing argument of the prosecutor constituted harmless error. We do not agree.

In arguing that the *evidence of guilt is overwhelming, the* Commonwealth simply refers us to its argument on the sufficiency of evidence. In so doing, however, the Commonwealth ignores the distinction that is drawn when this Court reviews the sufficiency of the evidence on the one hand and the harmlessness of an error on the other. While we view evidence in the light most favorable to the Commonwealth in testing sufficiency, and thus resolve ambiguities and disputes in the Commonwealth's favor, see note 2, supra, in testing whether the evidence is overwhelming, those same ambiguities and disputes are crucial to the determination of whether the evidence compelled the result reached.

In its argument on sufficiency, the Commonwealth relies heavily on the testimony of Mrs. Roby. While her testimony was sufficient evidence of guilt, it was anything but overwhelming; her credibility was sharply disputed. Reasonable jurors, faced with the inconsistencies pointed out by appellant, may very well have differed in assessing Mrs. Roby's credibility; thus her testimony cannot be relied upon as overwhelming evidence. See *Commonwealth v. Lasch,* 464 Pa. 259, 346 A.2d 547 (1975) (testimony weakened by impeachment with prior inconsistent statements will not support a finding of harmlessness).

The Commonwealth also relies on a statement taken from appellant by the police. However, appellant's statement was in many respects exculpatory: he attributed the statement "This is a stickup" to Byron Edwards; he claimed that he told the others in the station wagon "I ain't got nothing to do with this" and left the station wagon while the attempted robbery was in progress. The Commonwealth's reliance on this statement is therefore misplaced. Neither the testimony of Mrs. Roby nor the statement of appellant support a conclusion that the evidence of guilt is overwhelming.

The presence or occurrence of certain errors at trial, including the introduction into evidence of an involuntary confession, the absence of counsel, and bias on the part of the judge or jury, requires automatic reversal. See *Chapman v. California,* 386 U.S. 18, 23, 87 S.Ct. 824, 827–28, 17 L.Ed.2d 705 (1967); R. Traynor, The Riddle of Harmless Error 64–73 (1970). Those errors which infect the process of determining guilt or innocence cannot be overlooked by pointing to the strength of the Commonwealth's case. See e.g., *Commonwealth v. Bishop,* 472 Pa. 485, 372 A.2d 794 (1977) (defective instruction to jury on burden of proof constitutes reversible error which cannot be overcome by overwhelming evidence). Because we reject the Commonwealth's claim that the evidence of guilt is overwhelm-

308

JONES, former C. J., did not participate in the decision of this case.

POMEROY and NIX, JJ., dissent.

ing, we need not decide whether closing arguments which divert the jury from its proper function can be harmless in the absence of cautionary instructions which remove the prejudice.