J-S23014-17

2017 PA Super 156

| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|
| Appellee | |
| v. | |
| FRANKLYN PALMER HUTCHISON IV | |
| Appellant | No. 2772 EDA 2016 |

Appeal from the Judgment of Sentence July 27, 2016
In the Court of Common Pleas of Northampton County
Criminal Division at No(s): CP-48-CR-0004035-2015

BEFORE: OLSON, SOLANO and MUSMANNO, JJ.

OPINION BY OLSON, J.: **FILED MAY 22, 2017**

Appellant, Franklyn Palmer Hutchison IV, appeals from the judgment of sentence entered on July 27, 2016. We hold that the evidence in this case was sufficient to convict Appellant of abuse of a corpse. As we also conclude that Appellant is not entitled to relief on his remaining claims of error, we affirm.

The factual background and procedural history of this case are as follows. Appellant and Brianne Miles ("Miles") rented an apartment together. On July 7 or 8, 2015, Miles died of a drug overdose in the apartment. Appellant discovered Miles' body on July 8, 2015. Two days later, Appellant finally called police and notified them that there was a dead body in the apartment. When police arrived, Appellant originally told them that he discovered Miles' body that morning. Police found drug paraphernalia in the apartment.

On February 11, 2016, the Commonwealth charged Appellant via criminal information with abuse of a corpse,[1] filing a false police report,[2] and possession of drug paraphernalia.[3]  On May 24, 2016, Appellant filed a motion *in limine* seeking to exclude photographs of the corpse from being introduced into evidence.  On May 31, 2016, jury selection commenced.  On June 1, 2016, the trial court denied Appellant's motion *in limine*.  On June 2, 2016, the jury found Appellant guilty of all three offenses.  On July 27, 2016, the trial court sentenced Appellant to two to four years' imprisonment.  This timely appeal followed.[4]

Appellant presents four issues for our review:

1. Did the trial court commit reversible error by refusing to dismiss the charge of abuse of corpse where the evidence established that [] Appellant failed to promptly report [Miles'] death to authorities but otherwise did not cause her demise or manipulate her remains?

2. Did the trial court commit reversible error by permitting the Commonwealth to appeal to the sympathy of the jury by means of the prosecutor's argument to the jury that it should "imagine" what it felt like to be [Miles'] family members upon discovering the death of [Miles] and the decomposed state of her remains?

---

[1] 18 Pa.C.S.A. § 5510.

[2] 18 Pa.C.S.A. § 4906(b)(1).

[3] 35 P.S. § 780-113(a)(32).

[4] On August 30, 2016, the trial court ordered Appellant to file a concise statement of errors complained of on appeal ("concise statement").  **See** Pa.R.A.P. 1925(b).  On September 12, 2016, Appellant filed his concise statement.  On October 27, 2016, the trial court issued its Rule 1925(a) opinion.  All issues raised on appeal were included in Appellant's concise statement.

3. Did the trial court commit reversible error by permitting the Commonwealth to introduce graphic, color photographs of [Miles'] decomposed remains to the jury that were so disproportionally inflammatory in comparison to their evidentiary value so as to prejudice the Appellant and deprive him of a fair trial?

4. Did the trial court commit reversible error by failing to set forth sufficient reasons upon the record for imposing consecutive, statutory maximum sentences upon [Appellant?]

Appellant's Brief at 7 (certain capitalization omitted).

In his first issue, Appellant argues that the evidence was insufficient to convict him of abuse of a corpse. "Whether sufficient evidence exists to support the verdict is a question of law; our standard of review is *de novo* and our scope of review is plenary." *Commonwealth v. Giron*, 155 A.3d 635, 638 (Pa. Super. 2017) (citation omitted). In assessing Appellant's sufficiency challenge, we must determine "whether viewing all the evidence admitted at trial in the light most favorable to the [Commonwealth], there is sufficient evidence to enable the fact–finder to find every element of the crime beyond a reasonable doubt." *Commonwealth v. Williams*, 153 A.3d 372, 375 (Pa. Super. 2016) (citation omitted). "The evidence need not preclude every possibility of innocence and the fact-finder is free to believe all, part, or none of the evidence presented." *Commonwealth v. Kennedy*, 151 A.3d 1117, 1121 (Pa. Super. 2016) (citation omitted).

The Crimes Code makes it an offense to "treat[] a corpse in a way that [one] knows would outrage ordinary family sensibilities[.]" 18 Pa.C.S.A.

§ 5510 (defining the crime of abuse of a corpse). Appellant contends that his inaction, *i.e.*, failing to notify the authorities when he discovered Miles' body, is not criminalized by the statute. He argues that, in order for his inaction to be criminal under the statute, he needed to have a fiduciary relationship with Miles.

We conclude that, under this Court's decision in **Commonwealth v. Smith**, 567 A.2d 1070 (Pa. Super. 1989), *appeal denied*, 585 A.2d 468 (Pa. 1990), the evidence was sufficient to convict Appellant of abuse of a corpse. In **Smith**, the defendant starved her three-year-old child to death. After the defendant discovered the child's body, she moved out of the apartment and did not report the child's death to authorities. Three months later, maintenance workers entered the apartment to shut off the utilities and discovered the child's decomposing and mummified remains. The defendant was convicted of abuse of a corpse. On appeal, she argued that her inaction in failing to notify authorities of the child's death was not covered by the abuse of a corpse statute.

This Court framed the issue as "whether a person who knowingly leaves a corpse to rot, without making arrangements for a proper burial has treated a corpse in a way that she knows would outrage ordinary family sensibilities." **Id.** at 1073 (internal quotation marks and alterations omitted). Relying upon the commentaries to the Model Penal Code, which section 5510 is based on, this Court held that "the purpose of drafting the

abuse of corpse statute in very broad and general language was to ensure that offenses such as concealing a corpse came under the purview of the statute." **Smith**, 567 A.2d at 1073. That is what occurred in the case at bar. Appellant concealed Miles' corpse from authorities so that she could not receive a proper burial. Under **Smith**, this inaction violates section 5510.

Appellant attempts to distinguish **Smith** in two ways. First, he argues that the special mother-child relationship in **Smith** provided the mother with a fiduciary duty that he, as a roommate, did not possess. Furthermore, he argues that because the mother in **Smith** tied a rope around the door handle of the child's bedroom, where the child was found dead, she took some affirmative action in concealing the child's body while he took no affirmative action to conceal Miles' body.

Appellant argues that **Smith** was based upon the fiduciary relationship the defendant had to care for her child. Although this Court did focus on that relationship, it was in the context of discussing the sufficiency of the evidence for the third-degree murder conviction. **See id.** at 1072. This Court did not reference the parent-child relationship when discussing the defendant's abuse of a corpse conviction. Instead, this Court only focused on the fact that the defendant failed to notify authorities of the child's death and chose instead to let her corpse rot. The same thing occurred in the case at bar. Appellant failed to notify authorities of Miles' death and let her corpse rot.

In support of his second argument he cites the following portion of *Smith*:

> [The defendant] concealed her daughter's corpse from the proper authorities, and did not make arrangements for burial because she said she was afraid and confused. In so concealing the corpse, she allowed it to be eaten by rodents and become mummified. The statute was intended to cover [the defendant's] conduct. Moreover, as the trial court concluded, such conduct does indeed constitute an outrage to ordinary family sensibilities; therefore, we must affirm appellant's conviction for abuse of corpse.

*Smith*, 567 A.2d at 1073.

Appellant contends that the word "concealing" in this passage is critical in light of the facts of *Smith*. He argues that because the room in which the child's body was found was locked from the outside by a rope or strap, this active concealment of the child's corpse is what made the defendant's actions criminal. The facts in *Smith*, however, showed that the child was locked in the room prior to her death. *Id.* at 1072. Therefore, it was not the locking of the child's corpse in her bedroom that provided sufficient evidence for Smith to be convicted of abuse of a corpse. Instead, it was what occurred after the child died, *i.e.*, the defendant's failure to notify authorities of the child's death, that provided sufficient evidence to convict her of abuse of a corpse. The reason this Court discussed the child being locked in her room related solely to the determination that the evidence was sufficient to convict the defendant of third-degree murder. *See id.* Thus, the fact that the child was locked in her room was not a factor in this Court's

determination that the defendant was guilty of abuse of a corpse. Instead, it was the fact that the defendant failed to notify authorities of the child's death and left her corpse to rot.[5] Accordingly, we hold that the evidence was sufficient to convict Appellant of abuse of a corpse.

In his second issue, Appellant argues that the trial court erred in failing to sustain his objection to the Commonwealth's opening statement. We review a trial court's ruling on an objection to an opening statement for an abuse of discretion. *See Commonwealth v. Parker*, 919 A.2d 943, 949 (Pa. 2007) (citation omitted).

As our Supreme Court has explained:

Remarks in a prosecutor's opening statement must be fair deductions from the evidence which [s]he in good faith plans to introduce and not mere assertions designed to inflame the passions of the jury. The prosecution is not, however, required to prove conclusively all statements made during the opening [statement]. As long as there is a good faith and reasonable basis to believe that a certain fact will be established, reference may properly be made to it during the opening [statement]. Even if an opening [statement] is improper, relief will be granted only where the unavoidable effect is to so prejudice the finders of fact as to render them incapable of objective judgment.

*Commonwealth v. Jones*, 610 A.2d 931, 938–939 (Pa. 1992) (internal citations omitted).

---

[5] Moreover, even if concealment were required, there was sufficient evidence that Appellant concealed Miles' body. On multiple occasions after Miles' death, he told his landlord that Miles was sleeping or resting. N.T., 6/2/16, at 32-33. He also used Miles' cell phone to respond to a text message from her grandfather. *See* Commonwealth's Exhibit 29.

During her opening statement in the case *sub judice*, the prosecutor stated:

> Ladies and gentlemen of the jury, imagine the notification; Mr. and Mrs. Hargraves, your granddaughter has died. We suspect a drug overdose. Imagine the grief. But wait, there's more, Mr. and Mrs. Hargraves. Her body is completely decomposed and was left for at least 48 hours before it was discovered.

N.T., 5/31/16, at 52.[6] Appellant objected after the prosecutor's opening statement and asked for a curative instruction.[7] The trial court overruled the objection and denied the request.

Appellant contends that this statement by the prosecutor invited the jury to place themselves in the Hargraves' shoes. We disagree. The prosecutor did not invite the jurors to imagine that they (the jurors) received the phone call from police informing them of their granddaughter's death. Instead, she invited the jurors to imagine the grief that the Hargraves felt when they received that phone call.

---

[6] Appellant also makes a passing reference to other comments made by the prosecutor during this case. **See** Appellant's Brief at 17. Appellant fails to cite any of these statements and, therefore, any argument related to these statements is waived. **See** Pa.R.A.P. 2101, 2117(c)(4).

[7] A party may (and should) wait to the end of an opening statement or closing argument to object to statements or arguments made therein as long as there is no factual dispute regarding the content of the statement or argument and the objection is made immediately after the opening statement or closing argument with sufficient specificity to permit the trial court to give a limiting or curative instruction. **See Commonwealth v. Rose**, 960 A.2d 149, 154 (Pa. Super. 2008), *appeal denied*, 980 A.2d 110 (Pa. 2009) (citation omitted).

This distinction is critical because "[c]hallenged prosecutor comments must be considered in the context in which they were made." **Commonwealth v. Robinson**, 864 A.2d 460, 517 (Pa. 2004) (citation omitted). Read in context, the statement made by the prosecutor was meant to convey that the Commonwealth would prove that Appellant's treatment of Miles' corpse "would outrage ordinary family sensibilities[.]" 18 Pa.C.S.A. § 5510. This is the critical element of the abuse of a corpse statute and the prosecutor was permitted, during her opening statement, to explain how and why the Commonwealth would prove this element of the offense.

Appellant cites **Commonwealth v. Cherry**, 378 A.2d 800 (Pa. 1977), in support of his argument that the prosecutor's opening statement was improper. **Cherry**, however, involved a prosecutor asking the jury to imagine themselves as victims to a crime. During the challenged portion of the prosecutor's closing argument in **Cherry**, he used the word "you" or "your" 15 times. **Id.** at 802-803. This included inviting the jury to "put yourself in the place of any other victim, which could be you some day[.]" **Id.** at 803. As noted above, in the case *sub judice* the prosecutor did not invite the jury to imagine being in a victim's or witness' shoes. Accordingly, we conclude that the trial court did not abuse its discretion in overruling Appellant's objection.

In his third issue, Appellant argues that the trial court erred in denying his motion *in limine* to exclude color photographs of the victim's corpse. "When ruling on a trial court's decision to grant or deny a motion *in limine*, we apply an evidentiary abuse of discretion standard of review." ***Commonwealth v. Ivy***, 146 A.3d 241, 250 (Pa. Super. 2016) (citation omitted); *see **Commonwealth v. Solano***, 906 A.2d 1180, 1191 (Pa. 2006) (admission of photographs by trial court is reviewed for an abuse of discretion).

Our Supreme Court has explained that when considering the admission of photographs of a victim's body, a trial court must employ a two-step process.

> First, the trial court must examine whether the particular photograph is inflammatory. If the photograph is not inflammatory, it may be admitted if it is relevant and can serve to assist the jury in understanding the facts of the case. If the photograph is inflammatory, the trial court must determine whether the photograph is of such essential evidentiary value that its need clearly outweighs the likelihood of inflaming the minds and passions of the jurors.

***Commonwealth v. Woodard***, 129 A.3d 480, 494 (Pa. 2015) (internal citations omitted).

In this case, there were four photographs at issue – Commonwealth Exhibits 8, 9, 27, and 28. We have carefully reviewed those four exhibits. Commonwealth Exhibits 8 and 9 picture Miles' room, along with her body on the bed. In both pictures, Miles' body is covered by a black sheet. Only Miles' head and arm is visible in those photographs. Commonwealth Exhibit

- 10 -

28 is a photograph of the left side of Miles' body. Finally, Commonwealth Exhibit 27 is a photograph of the full front of Miles' body, including her face, lying on the bed.

Our Supreme Court has recognized that photographs of dead bodies, "by their very nature can be unpleasant, disturbing, and even brutal[.]" ***Commonwealth v. Johnson***, 42 A.3d 1017, 1033 (Pa. 2012). Nonetheless, "[t]here is no need to so overextend an attempt to sanitize the evidence of the condition of the body as to deprive the Commonwealth of opportunities of proof in support of the onerous burden of proof beyond a reasonable doubt." ***Commonwealth v. Walter***, 119 A.3d 255, 286 (Pa. 2015) (citation omitted).

Appellant cites ***Commonwealth v. Legares***, 709 A.2d 922 (Pa. Super. 1998), in support of his argument that the trial court improperly admitted the four exhibits. We conclude ***Legares*** is distinguishable from the case *sub judice*. In ***Legares***, the photograph in question "detail[ed] the destruction wreaked upon the victim's skull by the 20–gauge shotgun blast. The left side of the victim's head [was] shown, the flesh flayed from the skull and folded back, the fractured skull wired together to reveal the gaping entry wound, and the victim's brain removed." ***Id.*** at 925. This photograph, therefore, was far more graphic than the photographs of Miles' decomposing body.

Instead, we find instructive our Supreme Court's decision in ***Commonwealth v. Spell***, 28 A.3d 1274 (Pa. 2011). In ***Spell***, the defendant argued that the "photographs [admitted at trial] were inflammatory because they were in color and the victim's blood-covered body and face can be seen in one photograph." ***Id.*** at 1279. Our Supreme Court rejected that argument and concluded that although the color photographs were sanguinary, they were not inflammatory. ***See id.*** It reasoned that the photographs did not focus on the deceased's wounds but instead were wide-angle photographs. ***See id.*** Moreover, it concluded that the photographs were relevant to the abuse of a corpse charge. ***Id.***

Similar circumstances are present in this case. Commonwealth Exhibits 8, 9, and 27 are wide-angled camera shots of Miles' body lying on a bed. Commonwealth Exhibit 28 is a closer view of the body but it only includes the left portion of Miles' body and is not overly grotesque. As such, we conclude that these four color photographs were not inflammatory.

Appellant argues that even if the photographs were not inflammatory, they were not admissible as they were merely cumulative of other evidence. He cites witness testimony regarding the state of Miles' body and argues that the photographs were not necessary to prove the elements of abuse of a corpse. This argument is without merit. As our Supreme Court has explained, "a witness['] ability to testify as to the condition of a body does not render photographs of the body inadmissible." ***Spell***, 28 A.3d at 1280

- 12 -

(citations omitted); *Commonwealth v. Pruitt*, 951 A.2d 307, 320 (Pa. 2008); *Commonwealth v. Rush*, 646 A.2d 557, 560 (Pa. 1994); *Commonwealth v. McCutchen*, 454 A.2d 547, 550 (Pa. 1982).

In this case, the photographs were critical to showing the state of Miles' decomposing body so that the jury could determine whether Appellant's failure to notify authorities "would outrage ordinary family sensibilities[.]" 18 Pa.C.S.A. § 5510. Unlike the case of a gunshot or stab wound, it is difficult to verbalize the toll that time takes on a corpse. As such, we conclude that the photographs were not merely cumulative and were instead admissible to prove the abuse of a corpse charge.

Finally, Appellant argues that there were other alternatives to the color photographs. Specifically, he contends that the Commonwealth could have offered black and white photographs. As noted above, the color photographs were admissible. Although the Commonwealth could have admitted black and white photographs, the Commonwealth is free to present its case as it deems appropriate. Accordingly, we conclude that the trial court did not abuse its discretion by denying Appellant's motion *in limine* to exclude the photographs.

In his final issue, Appellant argues that the trial court erred by not explaining why it imposed consecutive sentences. This argument challenges the discretionary aspects of his sentence. *See Commonwealth v. Flowers*, 149 A.3d 867, 871 (Pa. Super. 2016) (citation omitted). Pursuant

to statute, Appellant does not have an automatic right to appeal the discretionary aspects of his sentence. *See* 42 Pa.C.S.A. § 9781(b). Instead, Appellant must petition this Court for permission to appeal the discretionary aspects of his sentence. *Id.*

As this Court has explained, in order to reach the merits of a discretionary aspects claim,

> [w]e conduct a four part analysis to determine: (1) whether [the] appellant has filed a timely notice of appeal; (2) whether the issue was properly preserved at sentencing or in a motion to reconsider and modify sentence; (3) whether [the] appellant's brief has a fatal defect; and (4) whether there is a substantial question that the sentence appealed from is not appropriate under the Sentencing Code.

*Commonwealth v. Popielarcheck*, 151 A.3d 1088, 1093 (Pa. Super. 2016) (citation omitted).

In this case, Appellant did not file a post-sentence motion nor did he challenge the discretionary aspects of his sentence at the sentencing hearing. Instead, he only sought clarification from the trial court regarding the rationale for its sentence. Seeking clarification is not the same as objecting. *See Purdy v. Florida*, 2017 WL 384094, *4 (Fla. Dist. Ct. App. Jan. 27, 2017) (Berger, J. concurring in part and dissenting in part) (asking for clarification at a sentencing hearing is not the same as objecting to the

sentence). Accordingly, Appellant failed to preserve his discretionary aspects claim for appellate review.[8]

In sum, we hold that the evidence was sufficient to convict Appellant of abuse of a corpse. We conclude that the trial court did not abuse its discretion by overruling Appellant's objection to the Commonwealth's opening statement. We also conclude that the trial court did not abuse its discretion by admitting photographs of Miles' corpse into evidence. Finally, we conclude that Appellant waived his discretionary aspects of sentencing claim. Accordingly, we affirm Appellant's judgment of sentence.

Judgment of sentence affirmed.

Judgment Entered.

_____
Joseph D. Seletyn, Esq.
Prothonotary

Date: 5/22/2017

---

[8] Moreover, even if Appellant preserved his discretionary aspects claim, we would conclude he is not entitled to relief. The trial court adequately set forth its rationale for its sentence in this case and we discern no abuse of discretion in its decision to sentence Appellant to two to four years' imprisonment.