J-S16009-21

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

COMMONWEALTH OF PENNSYLVANIA : IN THE SUPERIOR COURT OF
: PENNSYLVANIA
:
v. :
:
:
:
RODNEY CHANDLER :
:
Appellant : No. 117 EDA 2020

Appeal from the Judgment of Sentence Entered November 8, 2019
In the Court of Common Pleas of Philadelphia County Criminal Division at
No(s): CP-51-CR-0003391-2018

BEFORE:   BENDER, P.J.E., McLAUGHLIN, J., and STEVENS, P.J.E.[*]

MEMORANDUM BY BENDER, P.J.E.:          **FILED SEPTEMBER 01, 2021**

Appellant, Rodney Chandler, appeals from the judgment of sentence of 6-12 years' incarceration, and a consecutive term of 2 years' probation, imposed following his conviction for involuntary deviate sexual intercourse with a child ("IDSI"), 18 Pa.C.S. § 3123(b), and indecent assault of a person less than 13 years of age ("IA"), 18 Pa.C.S. § 3126(A)(7).  Herein, Appellant asserts that he is entitled to a new trial, alleging prosecutorial misconduct during the Commonwealth's opening and closing statements, and coercion of the jury by the trial court during the jury's deliberations on the verdict.  After careful review, we affirm.

A detailed summary of the facts underlying Appellant's IDSI and IA convictions is not necessary for the disposition of this appeal.  Briefly, in 2004,

_____

[*] Former Justice specially assigned to the Superior Court.

when Appellant was 14 years old, he began to live in the same home as B.H., who was 6 years old at the time. *See* Trial Court Opinion ("TCO"), 10/16/20, at 2. In addition to Appellant and B.H., the home was shared by Appellant's father, B.H.'s mother, and B.H.'s four siblings. *Id.* According to B.H., Appellant sexually assaulted her on three occasions during 2004 and 2005. *Id.* When B.H. reached the 8th Grade, she reported the assaults to her mother, who was unsupportive. *Id.* at 3. B.H. then reported the incidents to her uncle and a school counselor, after which the police were contacted. *Id.* B.H. subsequently gave a statement to the police detailing the three sexual assaults, allegations that B.H. repeated in an interview with a child forensic investigator from the Department of Human Services. *Id.*

Appellant's first trial resulted in a hung jury on February 15, 2019, and the Commonwealth's motion for a new trial was granted the same day. Appellant's second trial commenced on June 13, 2019, and following closing arguments held on June 17, 2019, the jury retired to deliberate. On June 18, 2019, the jury issued its verdict. Appellant was sentenced, as described *supra*, on November 8, 2019, and he did not file a post-sentence motion.

Appellant filed a timely notice of appeal on December 7, 2019, and a timely, court-ordered Pa.R.A.P. 1925(b) statement on December 25, 2019. The trial court issued its Rule 1925(a) opinion on October 16, 2020. Appellant now presents the following questions for our review:

> 1) Whether the prosecutor made [impermissible] comments during opening and closing arguments to the affect that "Nobody cared until somebody [you the jury] did[?"]

- 2 -

2) Whether the verdict was a product of coercion and/or undue influence by the [c]ourt's abuse of discretion, when after being informed that the jury was hung, it singled out a particular juror and opened that juror up to embarrassment or scorn from the other jurors (even though it knew of the juror's predicament from jury selection and could have excused him for cause), and then admonished the full jury panel for not having reached a verdict?

Appellant's Brief at 4 (some brackets in original).

In his first claim, Appellant alleges prosecutorial misconduct premised on ostensibly impermissible comments made by the assistant district attorney during her opening and closing arguments to the jury.

> Our standard of review for a claim of prosecutorial misconduct is limited to whether the trial court abused its discretion. In considering this claim, our attention is focused on whether the defendant was deprived of a fair trial, not a perfect one. Not every inappropriate remark by a prosecutor constitutes reversible error. A prosecutor's statements to a jury do not occur in a vacuum, and we must view them in context. Even if the prosecutor's arguments are improper, they generally will not form the basis for a new trial unless the comments unavoidably prejudiced the jury and prevented a true verdict.

*Commonwealth v. Bedford*, 50 A.3d 707, 715–16 (Pa. Super. 2012) (cleaned up).

The Commonwealth's opening argument to jury began as follows:

> Good morning, ladies and gentlemen or good afternoon, rather. Nobody cared until somebody did. I want you to listen to those words. I want to let them res[o]nate. I want you to let them sink in. Nobody cared until somebody did. That's the theme of [B.H.]'s life.

N.T., 6/12/19, at 5.

The trial court explained in its Rule 1925(a) opinion that, "[w]hile the record does not reflect th[at] defense counsel immediately objected to the

prosecutor's comment at that time, it appears as though counsel asked the court for a sidebar to discuss the prosecutor's opening remarks, and in response, the court had a sidebar." TCO at 4.[1]

> During the sidebar, the defense attorney explained the basis of his objection (*i.e.*, the prosecutor's comment). The court did not find the prosecutor's remark, on its face, to constitute pandering or to be unfairly prejudicial. However, out of an abundance of caution, the court gave the following instruction after the sidebar:

>> When I gave you my opening instructions and even later on, when I give you my closing instructions, one of the things that I will remind you about is … that the attorneys will give an opening argument and a closing argument. The way I operate in this courtroom, I try to be fairly democratic in the way I give them latitude to make their openings and their closings, because they are the one[]s … who are trying the case.

>> Just remember, though, that anything that the attorneys say, is argument, and you're not to accept the arguments as established facts, N[umber] 1. N[umber] 2[], the Commonwealth just gave its opening and made a comment along the lines of, show the victim that you care, [or] words to that effect. It may not be the exact thing she said. Just keep in mind, though, that you have to go by the evidence. And you are the factfinders, and … if the Commonwealth meets its burden proof, then, obviously, you should make the appropriate decision. And if the Commonwealth doesn't meet its burden of proof, you should make the appropriate decision.
>> ***
>> I want you to keep those principles in mind, but I'm telling you, any decision you make, should be based on those principles and not on any kind of emotional reaction. Okay. By show of hands, does everyone understand what I'm

---

[1] The trial court explained that the attorneys were instructed to withhold any objections until the jury was out of the courtroom. TCO at 4 n.19. Accordingly, Appellant did not waive his objection to the prosecutor's remarks when his counsel did not make a contemporaneous objection.

saying? Let the record reflect, that every juror raised his or her hand[]. …

[N.T., 6/12/19, at 25-26]  As the record reflects, the court cautioned the jury against placing improper weight on either counsel's opening or closing statements and reminded the jury to primarily consider the evidence offered at trial.  The court also verified that each juror understood its instruction by show of hands.

TCO at 4-5.

Appellant contends that he is entitled to a new trial based on the

prosecutor's remarks.  He argues:

Defense counsel[,] during trial and in closing argument[,] told [the] jury that there were a number of inconsistencies in complainant's testimony, detailing each of them, which should cause them to have a reasonable doubt as to [Appellant]'s guilt. Additionally, included in his remarks were references to the fact that the allegation of sexual assault was first made when complainant was age 15 [and] trying to evade being placed in juvenile detention for fighting by alleging she was sexually assaulted by her stepbrother when she was 7 years old.  Further, complainant's mother testified that whenever complainant got in trouble[,] she fabricated stories to avoid punishment and[,] consequently[ complainant's mother] doubted the veracity of the allegation.  The clear implication of the prosecutor's remarks was that they[,] the jury[,] should send a message to [A]ppellant with a verdict of guilt that they care [about complainant,] even though complainant's mother didn't believe her.

This case is similar to **Commonwealth v. Cherry**, 378 A.2d 800 (Pa. 1977), wherein the prosecutor in response to the defense counsel['s] pointing out the inconsistencies in a witness's testimony[,] appealed to the jury to have sympathy for the witness when weighing her testimony.

In that case the Court opined, "our cases emphasize that the prosecutor must not seek to divert the jury from its duty to decide impartially the facts of the case before it."  [**Id.** at 803.]  As … Justice Nix has stated for [our Supreme] Court, "(t)he determination of guilt must not be the product of fear or vengeance but rather intellectually compelled after a

- 5 -

disinterested, impartial and fair assessment of the testimony that has been presented." **Commonwealth v. Harvell**, 327 A.2d 27, 30 (Pa. 1974). The jury must not be diverted by statements appealing to its emotions or which may lead the jury away from its responsibility to resolve the case on the basis of the facts presented.

In the case *sub judice*[,] the statements of the prosecutor were improper and deprived [Appellant] of a fair trial. [**See**] **Cherry**, [**supra**]. … The remarks suggested that the jury should render a verdict based on sympathy for the complainant rather than the guilt or innocence of the accused. This appeal[ed] to the emotions [of the jurors and] encouraged the jurors to shift their inquiry away from the case before them, and thus prejudiced [Appellant]. [Appellant] is entitled to a new trial.

Appellant's Brief at 10-12 (citations reformatted; some citations omitted).

In rejecting this claim, the trial reasoned as follows:

Appellant now alleges that he was prejudiced by the prosecutor's opening comments and by the court. However, there are several reasons why the court disagrees with … Appellant's contention. The first reason is that the prosecutor's comments, as a whole, were merely argument and not calculated to taint the jury. The prosecutor said, "Nobody cared until somebody did."

However, no reasonable person would believe that these words, in and of themselves, would prejudice a jury. Here[,] the prosecutor was not improperly telling the jury to "send a message" to … Appellant, but rather she was merely trying to explain her theory of the case (which was established evidentially) that B.H.'s mother ignored her earlier complaints that … Appellant was sexually abusing her. The second is that the court still gave a timely curative instruction out of an abundance of caution reminding the jury about its fact-finding role, irrespective of what the prosecutor had said.

TCO at 6-7.

We agree with the trial court and conclude that Appellant is not entitled to relief on this claim. The prosecutor's comments were merely oratorical flair and, as such, they did not amount to prosecutorial misconduct. **See**

*Commonwealth v. Jones*, 668 A.2d 491, 514 (Pa. 1995) (noting that "prosecutorial misconduct will not be found where comments were … only oratorical flair"). Nonetheless, even if the remarks were prejudicial, "prejudice by prosecutorial remarks can be cured by instructions from the trial court." *Commonwealth v. Carter*, 643 A.2d 61, 77 (Pa. 1994). Here, the trial court issued a curative instruction, and "the jury is presumed to follow the court's instructions." *Jones*, 668 A.2d at 504. Moreover, Appellant took no exception to the instruction issued by the court, and did not seek a mistrial, indicating his satisfaction with the instruction. *See Commonwealth v. Morris*, 519 A.2d 374, 378 (Pa. 1986) (stating that the failure to request a mistrial or object to a curative instruction indicates "satisfaction with the instruction to the jury"). Accordingly, we ascertain no abuse of discretion by the trial court, as we conclude that Appellant's prosecutorial misconduct claim lacks merit.

Next, Appellant asserts that the jury's verdict was coerced by the trial court's actions during deliberations. The entirety of Appellant's argument, as set forth in his brief, is as follows:

> Jury deliberations is a matter within the sound discretion of the trial court, whose decision will not be disturbed unless there is a showing that the court abused its discretion or that the jury's verdict was the product of coercion or fatigue. *See Commonwealth v. Johnson*, 668 A.2d 97, 108 (Pa. 1995).
>
> Instantly, after a full day of deliberations[,] Juror #4 mentioned to the Judge that he had a long awaited doctor's appointment for his child the next day which would prevent him from coming to court. The discussion culminated with the Judge['s] warning juror #4 that if he failed to appear the next day[,] he would be found in contempt of court and put in jail.

The Judge then went on to warn the entire jury panel that if anyone failed to appear the next day to continue deliberations[,] they would face consequences. N.T., 6/17/19, at 47-71.

Appellant contends that the Judge's frustration with the possibility of a second hung jury motivated him to admonish the entire jury panel for having failed to reach a verdict[,] which eliminated the possibility of a hung decision and coerced a verdict of guilt. The Jury's verdict was the product of coercion. *Johnson*, *supra*.

Appellant's Brief at 13-14 (citations reformatted).

Turning to the record, the defense rested its case at the end of the day on Friday, June 14, 2019. *See* N.T., 6/14/19, at 127. On Monday, June 17, 2019, the attorneys gave their closing arguments, and the jury was charged by the trial court. *See* N.T., 6/17/19, at 10-39. Immediately after the jury retired to deliberate, the trial court dismissed the alternate jurors. *Id.* at 40-42. Soon thereafter, the court recessed for lunch. *Id.* at 44.

At 3:13 p.m., the jury requested the definitions for the charges. *Id.* The jury was called back into the courtroom, and copies of the charges were provided to the jurors. *Id.* at 46-47. As the jury was returning to deliberate, the trial court stated the following on the record regarding Juror #4:

[I]t was brought to my attention that this juror has another healthcare issue tomorrow with his son. I thought we had gone through this last week, when I told him that he would have to take other measures[] in order to address the issue with his son, and so I thought that that issue was resolved. And if he had said something to me earlier today, we could have substituted one of the alternates [for] him, but he didn't say anything, so I just assumed there was no issue.

It's being brought to my attention now, that tomorrow he has an appointment with his son, apparently, at 10 o'clock, so I'm just bringing him out very quickly to flush that out a little bit and find out exactly what the issue is, because we already sort of went down that road before.

I know last week his wife couldn't do it, but I don't know why she can't do it tomorrow.

*Id.* at 47-48.

The court then questioned Juror #4 about the matter. Juror #4 indicated that the appointment could not be easily rescheduled within a reasonable period of time, and that his wife was unable to take his son due to her job. *Id.* at 49-50. The trial court then addressed Juror #4 as follows:

Sir, we are in a critical stage here. You see how much time -- I'm not being [in]sensitive to your son. This is not a game.

If you had said something to me earlier today, I could have substituted one of the alternate jurors for you, but now you have already started your deliberations. I'm not at liberty to do that.

Now, last week when you mentioned it to me -- I appreciate your explanation and everything like that, but I really though[t] that last week was sort of a one-time thing, and that you had made provisions in order to address the issue last week.

The trial has not been that long. As you can see, I just excused the jurors to begin their deliberation, so it's not a situation, really, where the trial has been on days upon days and days and you've been deliberating for days.

Again, I don't want you to misunderstand me. I'm not insensitive. I have kids, as well, and I understand you have a very difficult situation with your son.

The only thing I'm trying to explain to you is, now we're at a critical stage now. If you had mentioned something to me before I excused the alternate juror, well, then I would have really just substituted you for the alternate juror, to be honest with you; however, the one juror had a flight on Wednesday, which I knew about. She gave me fair notice, so I made, you know -- she was an alternate juror, anyhow.

So, I would have made sure that her concern was addressed, although she would not have had to leave until Wednesday.

And the other juror, I could have substituted the other juror for you, which I would have been more than happy to [do], because I would not want you to miss your appointment with your son.

The only problem now is, my hands are tied, because you started deliberations, and we are at a really[,] really critical stage.

*Id.* at 52.

After considering other options to alleviate Juror #4's concerns, the court ultimately decided that it could not accommodate him. ***See id.*** at 56-63. The trial court then told Juror #4:

Sir, listen, I tried, because I am really sensitive, contrary to what you may think, I am really sensitive to your concern, but my hands are tied.

We can't reach the alternate. The alternate is gone and the other one is heading out of town on Wednesday.

You have to be here tomorrow, all right. I have no choice in the matter. We spent a lot of taxpayer money. This is a serious matter, because we need the jurors to come with a verdict, all right.

So, I'm sorry about that. You should have said something to me last week. There's nothing more I can do. I was trying to work out alternatives where you could possibly go to -- quite frankly, go to your appointment and then come here, but the other juror, as you heard, has to leave on Wednesday. So that doesn't solve any problem, it just puts us more in a jam, quite frankly.

So you just have to be here. You're under court order. Your wife can take your son. I have kids, when my kids were sick, that's what happens.

*Id.* at 63-64.

Juror #4 then asked the court what consequences he would face if he failed to appear the following day, to which the court responded:

Contempt. Possibly jailtime and fines. We know your address. And I can send the sheriff's [*sic*] out to arrest you. I don't want to do that.

You asked, so that's wh[y] I'm telling you. You asked what the consequences are. That's not something I like telling jurors, because I respect [the] fact that you are here, but we don't have the luxury of having trials and then having jurors -- because the point is, you're on notice, you know. When I questioned you -- you already know what the situation is.

Can you imagine if every juror decided not to come or, once we impaneled a jury and began deliberations, we would never get anything done. We would be wasting millions and millions of dollars. So, that's all I can tell you, I tried.

*Id.* at 64-65. Defense counsel appeared to begin to object to this statement by the court to Juror #4, but the court instructed him to wait, because the jury was returning to the courtroom at that moment. *Id.* at 68.

Immediately thereafter, the court instructed the entire jury as follows:

Thank you for being here. We are going to adjourn for today, because it's five after five, I meant to get you out [of] here earlier. What I wanted to tell you is this, and I try to be ever so respectful of all of you, because I do value the fact that you're here and taking time from your busy schedule[s], but I can't emphasize it enough, the delicate point that we are at now, now that you are charged.

We are not here to play patty cake, and this is not a game. You're here because you're under court order to be here. And, obviously, you were selected. We went through a tedious and a long jury selection process and you were [em]paneled, because we believe that you could be fair and impartial. And I tried to communicate with you all along.

I wish I could give you timeframes within a mathematical certainty, unfortunately, it doesn't work that way, but -- overall, the trial has not been long, and you [have] only been deliberating for a couple of hours. I'm not mad at anybody, I don't want you to misunderstand me.

- 11 -

What I am telling you is this. I am asking you to please come back here tomorrow. If everybody can be back here at quarter after 9 in room 201, so you can resume your deliberations.

When you come in, we are going to order lunches for you again, and I'm going to ask you to please resume your deliberations. I need everybody here.

For those of you who do not come, and I expect everybody to come, there are consequences. Judge's [*sic*] have a lot of authority, they can send sheriffs down to your house, they can impose hefty fines, they can do all kinds of things. Of course, I don't like talking to jurors like that, because I want to be respected [*sic*] of you. We value your services here, but I have to impress upon you, this is not a game.

We spent a lot of time and taxpayer money, and we're at a critical stage. I'm not at liberty to go into a lot of detail right now.

I told you that I would do that after the trial is over, but right now, it's critical that you go back there and deliberate and reach a verdict, one way or the other, so that's all I can tell you.

You try to be as nice as you can in life and as a judge, but I don't know what else to tell you. All right. There[ are] consequences for everything, so please be here tomorrow. And I ask you respectfully, try to move through -- I try to make sure you have a full day of deliberation, whatever -- it's up to -- really you. That's all I want to say. So if you can be here tomorrow quarter after. Everyone have a wonderful evening.

*Id.* at 68-71.

After the jury was dismissed for the evening, defense counsel moved for a mistrial. *Id.* at 71. He argued that the trial court had an undue influence on the jury when it instructed the jurors "to go back there and reach a verdict," while ostensibly taking "off the table" a "third option," that being the possibility of a hung jury. *Id.* at 73. The trial court rejected this argument, stating:

Yes, they do, which includes, if they can't reach a verdict, that's an option, as well. They'll let me know.

> If they feel that they are hopelessly deadlocked, that's a form of a verdict, too, as far as I am concerned.
>
> So, that's one of their options, as well. So, I don't know what more to say. I tried to handle it [as] tactfully and reasonably[] as I [could].

*Id.* The court then denied the mistrial motion. *Id.* at 74.

In its Rule 1925(a) opinion, the trial court further opined on its decisions regarding Juror #4 as follows:

> As the record reflects, the court politely explained that it could not unnecessarily disrupt the trial. Just as importantly, Juror [#]4 was not offended, understood his obligations as a juror, and made other arrangements for his son to be taken to his appointment.
>
> Juror [#]4 mentioned his second conflict after the jury had begun deliberations. On this occasion, the crier brought to the court's attention that Juror [#]4 had another scheduling conflict with his son, and the court also discussed the new conflict with both attorneys (outside the presence of the jury) on the record.

TCO at 12.

After making several attempts to accommodate Juror #4, "the court had no choice but to explain to Juror [#]4 that his presence would be required[.]" *Id.* at 14. Further, the court explains that it "did not demean or antagonize Juror [#]4. On the contrary, after being asked, the court merely reminded the juror about his legal obligation as a juror and about the consequences when a juror disobeys the law. Moreover, there is no evidence in the record that Juror [#]4 ever expressed hostility or disrespect for the court[.]" *Id.* at 15. The trial court further noted that, the following day, the court again colloqued Juror #4, who stated that he was able to reschedule the

- 13 -

appointment for his son.[2] *Id.* Juror #4 also calmly indicated at that time that he bore no ill will toward the court or the attorneys, and that he was able to be fair and impartial in rendering a verdict despite having to reschedule. *See* N.T., 6/18/19, at 15-18. Importantly, at that time, defense counsel agreed to continue with Juror #4, telling the court: "We are going to stick with him." *Id.* at 18.

Based on this record, we conclude that Appellant waived any claim specific to Juror #4 by indicating that he wanted to continue with Juror #4 following the colloquy held on June 18, 2019.[3] In any event, even if such a claim were preserved below, we would deem it waived due to Appellant's failure to adequately develop it for appellate review in his brief. *See Commonwealth v. Clayton*, 816 A.2d 217, 221 (Pa. 2002) ("[I]t is a well[-]settled principle of appellate jurisprudence that undeveloped claims are waived and unreviewable on appeal.").

Regarding his broader argument that the court coerced the jurors into reaching a guilty verdict, we disagree. Although Appellant's discussion in

---

[2] When asked why his wife did not take his son to the appointment, Juror #4 stated that his wife "could have" taken him, but that it was more difficult for her to take time off, so they rescheduled it for 67 days later. N.T., 6/18/19, at 16. The trial court indicated that, "[b]ased on Juror [#]4's own statement, it did not appear as though his son's appointment was as urgent as the juror said it was." TCO at 15 n.44.

[3] We further note that an alternate juror returned at the trial court's request. N.T., 6/18/19, at 21. Thus, the alternate juror was available to replace Juror #4 at the time defense counsel indicated that he was satisfied with Juror # 4 remaining on the jury.

support of this claim in his brief is minimal, he does cite *Johnson*, *supra*, for support, and so we will address his claim on the merits. In *Johnson*, the appellant argued that "the trial court erred in refusing to end jury deliberations during the penalty phase when the jury indicated that they were deadlocked after less than one full day of deliberation." *Johnson*, 668 A.2d at 108. The *Johnson* Court first recognized that:

> The length of jury deliberations is within the sound discretion of the trial judge whose decision will not be disturbed absent an abuse of discretion or evidence that the verdict was the product of coercion or an overworked or fatigued jury. In determining whether the trial court abused its discretion, consideration should be given to the charges at issue, the complexity of the issues, the amount of testimony to consider, the length of the trial, the solemnity of the proceedings and indications from the jury on the possibility of reaching a verdict.

*Id.* (citations omitted).

In determining that Johnson was not entitled to relief, our Supreme Court reasoned as follows:

> In the present case, testimony was taken over the course of six days during the guilt phase, the jury deliberated for two days before reaching a guilty verdict, and there was another day of testimony in the penalty phase. Deliberations began in the penalty phase at some point on June 9, 1992, and the jury informed the court that it was presently deadlocked before lunch on June 10, 1992. The court reinstructed the jury on aggravating and mitigating circumstances, informed the jury that if it reported that it was hopelessly deadlocked he would sentence [Johnson] to life and then sent the jury back for further deliberations. The jury, however, returned with a sentence of death within a few hours. The jury was polled and each juror stated that he or she agreed with the verdict.
>
> Based on the length of the trial, the gravity of the matter under consideration and the fact that the jury did not indicate that it was

- 15 -

hopelessly deadlocked, this Court finds that the trial court did not abuse its discretion in sending the jury back for further deliberations. Furthermore, [Johnson] has not demonstrated that the verdict was the product of coercion or an overworked and fatigued jury. Therefore, [Johnson] is not entitled to relief on this claim.

*Id.* at 108–09 (citations reformatted; footnote omitted). As the Court's discussion in *Johnson* indicates, that case did not involve coercion of the jury into reaching a verdict beyond stating the standard of review, and Johnson was not granted relief. Accordingly, *Johnson* is inapposite and does not support Appellant's claim that the jury in this case was coerced into reaching a verdict. Appellant presents no discussion to the contrary.

Furthermore, as the record here reflects, the jury had only deliberated for less than two days before reaching a verdict. The jury began its deliberations after lunch on June 17, 2019. N.T., 6/17/19, at 39. The next day, the jury submitted a question at 12:20 p.m., asking the court: "What happens when we are deadlocked, without coming up with a unanimous decision." N.T., 6/18/19, at 30. Notably, the jury asked what would happen *if* they were deadlocked, and did not specifically indicate that they were, in fact, already deadlocked. The trial court then instructed the jury as follows:

What I would like you to do is, continue deliberating, to see if you can reach a resolution, all right. And you're welcome to send out another note, if necessary.

Now, your lunches are here, and obviously, you can feel free to continue to deliberate while you have your lunch. Okay. It's not being evasive, I [would] just rather handle it that way for now. Thank you.

So, I'm going to re-excuse you to have your lunch and to continue your deliberations. Thank you.

- 16 -

*Id.* The jury ultimately reached a verdict at 3:37 p.m. that same day. *Id.* at 31. All the jurors were polled, and each one indicated his or her agreement with the verdict. *Id.* at 33-36.

Given his sparse argument, and our careful review of the record, Appellant fails to convince us that the trial court abused its discretion in denying his motion for a mistrial based on the court's comments to the jury. It was not coercive to instruct the jurors regarding the potential legal consequences should they fail to appear. Furthermore, we agree with the Commonwealth's argument that "the court's remarks obviously did not preclude the possibility of a hung jury; indeed, the jurors inquired what would happen if they deadlocked *after* the court had already given the instruction with which [Appellant] takes issue." Commonwealth's Brief at 9 (emphasis in original). On these facts, we ascertain no abuse of discretion by the trial court in denying Appellant's motion for a mistrial. Accordingly, no relief is due.

Judgment of sentence *affirmed*.

*Judgment Entered.*

Joseph D. Seletyn, Esq.
Prothonotary

Date: 9/1/2021