J-S06025-24

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| SADEEN JONES | : | |
| | : | |
| Appellant | : | No. 1936 EDA 2023 |

Appeal from the PCRA Order Entered June 29, 2023
In the Court of Common Pleas of Bucks County Criminal Division at
No(s): CP-09-CR-0000806-2018

BEFORE: DUBOW, J., McLAUGHLIN, J., and SULLIVAN, J.

MEMORANDUM BY McLAUGHLIN, J.:                    **FILED AUGUST 16, 2024**

Sadeen Jones appeals the order entered denying his Post Conviction Relief Act ("PCRA") petition. *See* 42 Pa.C.S.A. §§ 9541-9546. Jones raises claims of ineffective assistance of counsel and challenges the court's order that he register as a sex offender under the Sexual Offender Registration and Notification Act ("SORNA"). We vacate in part and remand for further proceedings on a single ineffectiveness claim. We affirm in all other respects.

In 2019, a jury convicted Jones of robbery, burglary, conspiracy, simple assault, recklessly endangering another person, false imprisonment of a minor, false imprisonment, unlawful restraint of a minor, unlawful restraint,

theft by unlawful taking, theft by extortion, and criminal coercion.[1] We previously summarized the facts giving rise to Jones' convictions:

> In the early morning hours of August 21, 2017, [Jones] and two co-conspirators, Brandon Eugene Davis and Raymond Anthony Daniels, executed an armed home invasion of the Bucks County residence of Emily and Jonatan Nadav. Present during the invasion were the Nadavs, their two daughters, ages twenty-five and twelve, and Mrs. Nadav's seventy-three-year-old mother. N.T., 1/28/19, at 35-37, 62-64, 77-78, 120-122.
>
> Masked, gloved, and dressed in dark clothing, the men terrorized the Nadavs with handguns throughout the extended encounter—at times holding a gun to the head of each Nadav daughter—and threatened to shoot until the family revealed where it kept its safe containing money and jewelry. Before the trio absconded with over $300,000 in cash and personal property, they used their cellular telephones multiple times in the home to update one another on their progress. N.T.[,] 1/28/19, at 48.
>
> On November 16, 2017, the Newtown Township Police Department arrested and charged [Jones] for his alleged role in the home invasion.

*Commonwealth v. Jones*, No. 3284 EDA 2019, 2020 WL 6538814 at *1 (Pa.Super. filed November 6, 2020) (unpublished memo.) (footnote omitted), *appeal denied*, 253 A.3d 210 (Table) (Pa. filed May 4, 2021). The court sentenced Jones to an aggregate term of 70 to 140 years' incarceration. We affirmed the judgment of sentence, and our Supreme Court denied allowance of appeal. *See id.* Jones sought United States Supreme Court review, which

_____

[1] 18 Pa.C.S.A. §§ 3701(a)(1)(ii), 3701(a)(1)(iii), 3502(a)(1)(i), 903, 2701(a)(3), 2705, 2903(b), 2903(a), 2902(b)(1), 2902(a), 3921, 3923(a)(7), and 2906(a)(1), respectively.

that Court denied on May 2, 2022. **See Jones v. Pennsylvania**, 142 S.Ct. 2684 (mem.) (2022).

Jones filed the instant, timely PCRA petition, raising ineffectiveness claims. He maintained that trial counsel should have objected to the trial court's instruction on reasonable doubt, prosecutorial misconduct during closing argument, and his registration as a sex offender under SORNA. Jones further maintained that even if counsel had no obligation to raise the SORNA challenge, "the [c]ourt should find that [**Commonwealth v.**] **Muhammad**[, 241 A.3d 1149 (Pa.Super. 2020)] and [**Commonwealth v.**] **Torsilieri**[, 232 A.3d 567 (Pa. 2020)] present a retroactive change in law[.]" PCRA Petition, filed 9/22/22, at ¶ 81. Regarding direct appeal counsel, Jones maintained that counsel should have challenged the court's allowing the Commonwealth to amend the bills of information immediately before the close of its case-in-chief, as well as the court's reasonable doubt jury instruction.

At a PCRA hearing, counsel argued that **Muhammad** should apply retroactively as a "substantive challenge to the legality of [Jones'] sentence in that it just violates his Constitutional rights, the due process, and reputation under the Pennsylvania Constitution given the facts of this case and the charges." N.T., PCRA Hearing, 4/11/23, at 9.[2] Regarding **Torsilieri**, counsel suggested that the court could "dismiss the facial challenge to SORNA pending **Torsilieri** -- the resolution of **Torsilieri**, specifically because

_____

[2] No testimony was taken and no evidence was presented at this hearing.

[**Commonwealth v.**] **Lacombe**, 234 A.3d 602 (Pa.2020)], says that the petitioner can raise that claim at any time without the confines of the PCRA's jurisdictional limits." **Id.** at 12.[3]

The PCRA court issued a Pa.R.Crim.P. 907 notice to dismiss the petition without an evidentiary hearing. It concluded that Jones' ineffectiveness claims relating to the jury instruction and prosecutorial misconduct were waived and/or meritless. Regarding his SORNA claim, the court concluded that counsel was not ineffective "for failing to raise an as-applied constitutional challenge to [Jones'] SORNA registration at the time of sentencing or while his case was pending on a direct appeal" when **Muhammad** was decided. Pa.R.Crim.P. 907 Notice, filed 4/28/23, at 1. The court also dismissed Jones' facial challenge to SORNA without prejudice "to allow [Jones] to raise the claim after **Torsilieri** is decided by the Pennsylvania Supreme Court." **Id.** at 2. The court ultimately denied Jones' PCRA petition, and this timely appeal followed.

Jones raises the following issues:

1. Whether trial and appellate counsel provided the ineffective assistance of counsel in failing to adequately challenge the trial court's improper jury instructions where the court instructed the jury that if the jury were to find that the Commonwealth had proven the crimes charged beyond a reasonable doubt, the jury "must" convict, and trial and appellate counsel failed to properly

---

[3] Counsel was referencing the Commonwealth's further appeal in **Torsilieri**, which at the time was pending before our Supreme Court regarding the constitutionality of SORNA. **See** Commonwealth's Answer in Opposition to Post Conviction Relief Act Petition, filed 11/14/22, at 26-27. The Court decided **Torsilieri** on May 24, 2024. **See Commonwealth v. Torsilieri**, 316 A.3d 77 (Pa. 2024).

- 4 -

challenge the trial court's reasonable doubt instruction in which the court instructed the jury that a pause and hesitation could not be reasonable doubt?

2. Did trial counsel provide the ineffective assistance of counsel in failing to object to prosecutorial misconduct from the Commonwealth in the form of improper closing argument where the prosecution violated the "golden rule" by repeatedly asking the jurors to imagine themselves in the place of the victim?

3. Whether appellate counsel failed to properly challenge the trial court's decision to permit the Commonwealth to amend the bills at the close of its case to add additional counts of robbery, false imprisonment, and unlawful restraint?

4. Whether Jones should be required to register as a sex offender pursuant to SORNA where Jones did not commit any crime that could even remotely be described as a sex offense?

Jones' Br. at 8-9 (suggested answers omitted).

We review the denial of PCRA relief to determine "whether the PCRA court's order is supported by the record and free of legal error." ***Commonwealth v. Anderson***, 234 A.3d 735, 737 (Pa.Super. 2020) (quoting ***Commonwealth v. Smith***, 181 A.3d 1168, 1174 (Pa.Super. 2018)).

### INEFFECTIVE ASSISTANCE OF COUNSEL

Each of Jones' issues challenge the assistance of trial and/or appellate counsel. We address each separately.

Counsel is presumed effective, and the petitioner bears the burden of overcoming the presumption. ***See Commonwealth v. Fears***, 86 A.3d 795, 804 (Pa. 2014). This is accomplished by pleading and proving: "(1) the underlying claim has arguable merit; (2) no reasonable basis existed for

counsel's actions or failure to act; and (3) [the appellant] suffered prejudice as a result of counsel's error such that there is a reasonable probability that the result of the proceeding would have been different absent such error." **Id.** (citation omitted). A claim has arguable merit if "the factual statements are accurate and 'could establish cause for relief.'" **Commonwealth v. Stultz**, 114 A.3d 865, 880 (Pa.Super. 2015) (quoting **Commonwealth v. Stewart**, 84 A.3d 701, 707 (Pa.Super. 2013) (*en banc*)). "A failure to satisfy any prong of the ineffectiveness test requires rejection of the claim of ineffectiveness." **Commonwealth v. Daniels**, 963 A.2d 409, 419 (Pa. 2009).

Additionally, when a petitioner asserts a claim that raises an issue of material fact, the PCRA court should hold an evidentiary hearing. **See Commonwealth v. Grayson**, 212 A.3d 1047, 1054–55 (Pa.Super. 2019) ("'if there are factual issues to be resolved,' the PCRA court should hold an evidentiary hearing") (citation omitted)). However, if it is clear from the pleadings that no there is no genuine issue of material fact, the court may dismiss the petition without a hearing. **See Commonwealth v. Wah**, 42 A.3d 335, 338 (Pa.Super. 2012).

*Jury Instructions*

Jones argues that trial counsel failed to object to the reasonable doubt instruction, which he alleges was erroneous. He claims that the court's instruction "that a hesitation or pause could not be a reasonable doubt" contradicted the definition for reasonable doubt explicitly established by our appellate courts and the standard jury instructions. Jones also contends that

the court misled the jury by stating it "must convict if the Commonwealth met its burden rather than using the correct language that it should convict." Jones' Br. at 24 (internal quotations omitted). He claims that these errors violated his due process rights and potentially influenced the jury to discount reasonable doubt, especially because the Commonwealth's evidence was, in his view, circumstantial. He further claims that appellate counsel was ineffective for failing to raise the issue of the court's instructions on direct appeal. Jones maintains he suffered prejudice because his due process rights were violated and the court's instructions reduced the Commonwealth's burden.

"The trial court has broad discretion in phrasing its instructions, and may choose its own wording so long as the law is clearly, adequately, and accurately presented to the jury for its consideration." **Commonwealth v. Hawkins**, 787 A.2d 292, 301 (Pa. 2001); **see Commonwealth v. Hughes**, 865 A.2d 761, 788 (Pa. 2004) (stating appellate court "will not evaluate the adequacy of the instructions based on isolated references; rather, the charge is reviewed as a whole, with deference accorded the trial court's discretion in phrasing its instructions"). We review a court's jury instruction "as a whole to determine if it was fair or prejudicial." **Commonwealth v. Drummond**, 285 A.3d 625, 634 (Pa. 2022) (citation omitted).

The contested jury instruction of reasonable doubt is as follows:

> There was reference during the closing arguments to what reasonable doubt means. It was slightly different from what

I am saying. You must go by my definition and not anything you heard during closing arguments.

A reasonable doubt is a doubt that would cause a reasonably careful and sensible person to be restrained in acting in a matter of importance in his or her own affairs. It was argued to you that it was mere hesitation or pause. There is not a major decision anybody makes in their lifetime that you wouldn't pause before you made it. That's an important decision. Pause is, by definition, part of making that kind of major decision.

So the question is whether or not a reasonable person, a careful person, a sensible person would hesitate and then be restrained from acting in a matter of importance in his or her own affairs. That is a reasonable doubt. A reasonable doubt must fairly arise out of the evidence, or it can arise from the lack of evidence presented, but it cannot be a doubt that's created to avoid carrying out an unpleasant duty. Some people find sitting in judgment of another person very difficult, but that is what you are responsible for doing. That's what you have taken an oath to do. And so you cannot find reasonable doubt in order just to avoid the decision. It must be based on the evidence or the lack of evidence that's presented.

So, to summarize, you may not find the defendant guilty based on mere suspicion. The Commonwealth has the burden of proving the defendant guilty beyond a reasonable doubt. If it meets that burden, then the defendant is no longer presumed to be innocent and you must find him guilty. On the other hand, if the Commonwealth's evidence does not meet its burden, then you must find him not guilty.

N.T., 1/31/19, at 13-15. Defense counsel objected, "I got the impression that if you were restrained or constrained from making a decision of importance to yourself, that that is -- that is reasonable doubt." *Id.* at 64. The court overruled the objection "because the language that I have used has been approved." *Id.* at 65.

- 8 -

Jones' claim is meritless. The court's instruction, when taken as a whole, properly conveyed the standard for reasonable doubt. The court explained that a reasonable doubt occurs when "a reasonable person, a careful person, a sensible person would hesitate and then be restrained from acting in a matter of importance in his or her own affairs." *Id.* at 14. This instruction was in line with the suggested instructions for reasonable doubt and did not reduce the Commonwealth's burden, as Jones suggests. *See Commonwealth v. Uderra*, 862 A.2d 74, 92 (Pa. 2004) (stating that a jury instruction is proper "where the charge, taken as a whole, fairly and accurately conveys the essential meaning"). Moreover, as the trial court explained, the Supreme Court has not found error in a nearly identical instruction. *See Commonwealth v. Cook*, 952 A.2d 594, 632 (Pa. 2008).

Jones' additional claim that trial counsel was ineffective for failing to object to the court's instruction that the jury "must" find him guilty if the Commonwealth met its burden is also meritless. This Court has previously rejected such a claim. *See Commonwealth v. Pope*, 14 A.3d 139, 143 (Pa.Super. 2011). Furthermore, the instruction here was similar to the Pennsylvania Suggested Standard Criminal Jury Instruction for "Presumption of Innocence – Burden of Proof– Reasonable Doubt." *See* Pa. SSJI (Crim), §7.01 ("If the Commonwealth's evidence fails to meet its burden, then your verdict **must** be not guilty. On the other hand, if the Commonwealth's evidence does prove beyond a reasonable doubt that the defendant is guilty, then your verdict **should** be guilty") (emphasis added). Here, as in *Pope*, the

trial court informed the jury that if the Commonwealth met its burden, it "must" find Jones guilty and conversely if it determined that the Commonwealth failed to meet its burden, it "must" find Jones not guilty. No relief is due on this claim.

*Closing Argument*

Jones alleges that his trial counsel failed to object to prosecutorial misconduct during the Commonwealth's opening statement and closing argument. He argues that the Commonwealth repeatedly urged "the jurors to imagine themselves as the victims," and in so doing violated the "golden rule" against invoking sympathy from the jurors. Jones' Br. at 40. He claims the Commonwealth focused on "generating sympathy for the victims rather than the evidence" and "emphasized the fear that the complainants likely felt during the incident rather than the actual evidence[.]" *Id.* at 40, 41. Jones maintains that the Commonwealth's argument "served no purpose other than to inflame the passions of the jury and make it harder for them to objectively review the evidence and determine whether the Commonwealth met its burden." *Id.* at 46. He states that our Courts have "repeatedly held that prosecutors may not urge the jurors to convict based on sympathy for the victim or to imagine being the victims and how horrible the crime must have been to experience." *Id.* at 46-47.

"Our review of a prosecutor's comment and an allegation of prosecutorial misconduct requires us to evaluate whether a defendant received a fair trial, not a perfect trial." *Commonwealth v. Jaynes*, 135 A.3d

606, 615 (Pa.Super. 2016). "[T]he prosecution is accorded reasonable latitude, may employ oratorical flair in arguing its version of the case to the jury, and may advance arguments supported by the evidence or use inferences that can reasonably be derived therefrom." *Id.* A prosecutor's comments do not constitute reversible error "unless the unavoidable effect of such comments would be to prejudice the jury, forming in their minds a fixed bias and a hostility toward the defendant such that they could not weigh the evidence objectively and render a true verdict." *Commonwealth v. Stafford*, 749 A.2d 489, 498 (Pa.Super. 2000) (citation omitted).

The contested portion of the Commonwealth's opening statement is as follows:

> I will argue for you again that these men took away the dreams of [C.N.] and Elle and Manya and Emily and Jonathan that night. I will argue to you again that they created their nightmare. I will argue that they took away so much more from the Nadav family than money and property or even dreams.
>
> I will argue that they began a nightmare for the Nadavs and I will ask you to end it by finding them guilty, but until then, I want to thank you for your attentiveness and patience as this nightmare unfolds.

N.T., 1/28/19, at 21.

The contested portion of the Commonwealth's closing argument is as follows:

> Jurors, imagine that moment for just a second of being on the ground and **your** hands and **your** legs being tied and there are two guns to **you**, pointed at **you**, and **you** are a 25-year-old – 25-year-young woman and all **you** think about is **your** 12-year-old sister and **your** grandmother.

Over and over and over, for 30 minutes, she begged for their lives and she was told: We'll do what we have to do. We'll do what we have to do.

\*\*\*

We talked about Manya. We talked about the smell. We talked about – we didn't talk yet about what she went through. And she, too, as she was marched – marched from her room, peeking into [C.N.'s] room to make sure her 12-year-old granddaughter was there and safe. And by the way she wasn't.

And the confusion as she woke up and she is dazed and she is in her pajamas and all she hears is somebody yelling because she can't really hear very well, but she hears yes or no, yes or no, and she doesn't know how to answer.

Imagine that confusion. Imagine not knowing what is happening. Imagine just thinking that **your** 12-year-old granddaughter is right next door and this man is screaming, "yes or no," and **you** don't know the right answer. What if **you** get it wrong? And then she tells **you** about being marched down to her daughter Emily's room and she tells you that she walked into Emily's room. There is [C.N.] on the ground, crying and shaking. And there is her daughter and her son-in-law in bed and now she realizes she's not the only one and this guy isn't the only one either. It's an invasion.

And remember that moment of when she said they put them in the closet and they're in the closet and she said, "They said don't move" and she thought, "This is it. This is it." She thought her last moments were going to be in a closet with 12-year-old [C.N.], with her daughter and with her son-in-law, execution style.

\*\*\*

Just picture those moments, those moments thinking that **your** life or that of **your** 12-year-old [granddaughter] relies on **you** opening the safe and **you** not being able to do it.

\*\*\*

I told you at the beginning of this case that I would come back before you and I would summarize all of the evidence

- 12 -

for you and I told you that I would argue to you that the dreams of the Nadav family are gone. You heard about [C.N.] sleeping on a blowup mattress next to her parents because, at 14, she can't sleep alone. You heard about Elle not wanting to come home to visit her family. You saw Manya and the effects this had on her to this day. You saw Emily and heard her voice as she talked about her children and what happened to them and you saw what this did to their father.

Jurors, you have now heard this nightmare. You have heard the evidence of what happened in that house. You heard the evidence of the dreams being stolen. Let's end this nightmare. Let's put an end to it all. Finding the defendants guilty. Thank you.

N.T., 1/30/19, at 197-98, 203-05, 206, 242-43 (emphasis added).

The PCRA court found Jones' underlying claim lacked merit. It stated that while the prosecutor "referred to the victims' thoughts and emotions during the invasion, [the prosecutor] did so only to a minimum as the majority of her opening and closing statements were based on facts presented throughout the trial." PCRA Court Opinion, filed 8/24/23, at 8. It further concluded that "victims' thoughts and emotions are necessary for certain elements." *Id.* We disagree.

We liken this case to **Commonwealth v. Cherry**, 378 A.2d 800, 803 (Pa. 1977), where the prosecutor asked the jury to imagine themselves as a victim of a crime. The prosecutor in that case said, "[J]ust put yourself in the place of any other victim, which could be you some day, we hope not[.]" *Id.* On appeal, our Supreme Court determined that the prosecutor's asking "the jurors to imagine themselves as victims improperly invoked the sympathy of the jurors for [the victim]." *Id.* at 804. The Court further concluded that the

prosecutor's statements put the jury "in a position to disregard, out of sympathy, the inconsistencies in her testimony pointed out by [Cherry]." *Id.* at 806. As such, the Court reversed the judgment of sentence and granted a new trial.

Here, the prosecutor's statements went beyond asking the jury to imagine themselves as a victim of a crime. The prosecutor asked the jury to imagine themselves as the actual victims of the crimes. She repeatedly asked the jury to imagine themselves as the 12-year-old victim, the 25-year-old victim, and the grandmother who was also victimized. *See* N.T., 1/30/19, at 197 ("Jurors imagine that moment just for a second of being on the ground and **your hands** and **your legs** being tied and there are two guns **to you**, pointed **at you**, and **you are a 25-year-old – 25-year-young woman**"); 204 ("Imagine just thinking that **your 12-year-old granddaughter** is right next door and this man is screaming, 'yes or no,' and **you** don't know the right answer. What if **you** get it wrong?"); 206 ("Just picture those moments, those moments thinking that **your life** or that of **your 12-year-old** relies on **you** opening the safe and **you** not being able to do it") (emphasis added).

The Commonwealth maintains that *Cherry* is distinguishable because the prosecutor there asked the jury to imagine itself in the position of a victim to argue that the jury should disregard inconsistencies and gaps in testimony, and the prosecutor here made the argument in a bid to have the jury find that the victims were in fear of serious bodily injury. That is a distinction without a difference. Though *Cherry* is not directly on all fours with the facts of the

instant case, here, as in **Cherry**, the prosecutor's statements "suggested that the jury should render a verdict based on sympathy for the witness rather than the guilt or innocence of the accused." **Cherry**, 378 A.2d at 804. Jones' underlying claim has arguable merit. We therefore remand for the PCRA court to hold an evidentiary hearing to determine whether Jones has satisfied the remaining prongs of the ineffectiveness test. **See Fears**, 86 A.3d at 804.

*Bills of Information*

Jones argues that appellate counsel should have challenged the Commonwealth's amendment to the bills of information. The Commonwealth moved for the amendment at the close of its case-in-chief. The bills of information as originally drafted contained one count each of robbery, false imprisonment, and unlawful restraint, but each count alleged that Jones had committed the crime against "Jonathan Nadav, and/or Emily Nadav and/or Elle Nadav and/or C.N., a minor, and/or Manya Gurevich. . . ." Bills of Information, filed Mar. 6, 2018, at 1. The amendment separated each count into five separate counts, one for each victim. The trial court granted the amendment over a defense objection. It explained that the original information charged a crime against each of the five victims:

> [M]y ruling is that their robbery charge was charged "and/or," which the law allows the Commonwealth to charge separate counts of robbery where there is force in one theft, where the – there's force applied to separate individuals.
>
> Here, there is evidence that there was force applied to five separate individuals during the course of this home invasion, so therefore it would support five separate robberies.

- 15 -

> In recognition that the Commonwealth charged "and/or," "and/or" and therefore is able to charge them separately since they are, in fact, five separate robberies – the fact they included it in one count on the criminal information, which is controlled more by computer than anything else these days, doesn't alter the fact that the charge itself charges five separate counts and so therefore I will submit a verdict slip as to five separate counts.

N.T, Trial, 1/30/19, at 111.

Jones maintains that "[t]here was no technical impediment to the Commonwealth filing multiple counts of robbery" and instead "[i]t simply chose not to do so until the trial was effectively over." Jones' Br. at 51. Had counsel raised this issue on appeal, Jones claims that the additional charges would have been vacated. Jones maintains that counsel's failure to act prejudiced him because he received a consecutive sentence based on the additional charges. Additionally, he argues he was "deprived of the ability to decide whether to plead guilty rather than face the additional exposure." *Id.* at 58.

Rule 564 of the Criminal Rules of Procedure governs the amendment of an information:

> The court may allow an information to be amended, provided that the information as amended does not charge offenses arising from a different set of events and that the amended charges are not so materially different from the original charge that the defendant would be *unfairly prejudiced*. Upon amendment, the court may grant such postponement of trial or other relief as is necessary in the interests of justice.

Pa.R.Crim.P. 564 (emphasis added).

When reviewing a challenge to an amendment, we consider:

- 16 -

whether the crimes specified in the original indictment or information involve the same basic elements and evolved out of the same factual situation as the crimes specified in the amended indictment or information. If so, then the defendant is deemed to have been placed on notice regarding his alleged criminal conduct. If, however, the amended provision alleges a different set of events, or the elements or defenses to the amended crime are materially different from the elements or defenses to the crime originally charged, such that the defendant would be prejudiced by the change, then the amend[ment] is not permitted.

*Commonwealth v. Quinones*, 200 A.3d 1004, 1008–09 (Pa.Super. 2018)

(quoting *Commonwealth v. Sinclair*, 897 A.2d 1218, 1221 (Pa.Super.

2006)). When presented with an amendment, a court should consider the

following factors:

(1) whether the amendment changes the factual scenario supporting the charges; (2) whether the amendment adds new facts previously unknown to the defendant; (3) whether the entire factual scenario was developed during a preliminary hearing; (4) whether the description of the charges changed with the amendment; (5) whether a change in defense strategy was necessitated by the amendment; and (6) whether the timing of the Commonwealth's request for amendment allowed for ample notice and preparation.

*Commonwealth v. Witmayer*, 144 A.3d 939, 947 (Pa.Super. 2016) (citation

omitted).

Jones' underlying claim lacks arguable merit. The Commonwealth's

amendment involved crimes that involved the same basic elements and

evolved out of the same factual situation. The amended charges were "not so

materially different" from the original charges that Jones would have been

unfairly prejudiced since the original charges mentioned all the victims in one count rather than five separate counts. Pa.R.Crim.P. 564.

*SORNA*

Jones argues that his trial counsel failed to object to the court's order for him to register as a sex offender under SORNA despite not being convicted of a sex crime. He maintains that this registration requirement is unconstitutional, creating "an irrebuttable presumption to Jones violat[ing] his rights to due process and reputation." Jones' Br. at 59. Jones relies on ***Muhammad***, where this Court vacated the order directing Muhammad to comply with SORNA registration because she had not been convicted of a sex offense, had no prior criminal history, and was not likely to reoffend. Jones maintains that he is like Muhammad because he had no prior record of sex offense, was not found to be a sexually violent predator, and had not committed a sex crime in the instant case. Jones also cites ***Torsilieri***, stating that it presents a retroactive change in law regarding his SORNA registration. Finally, he argues that "appellate counsel should have a raised a challenge to SORNA as soon as ***Muhammad*** was decided[.]" ***Id.*** at 62.

Jones' claim fails. His underlying claim relies on ***Muhammad***. However, ***Muhammad*** had not been decided at the time of Jones' sentencing or his filing of a direct appeal. The court sentenced Jones on May 23, 2019, and Jones filed his direct appeal on November 14, 2019. The ***Muhammad*** Court filed its opinion on October 23, 2020. Thus, neither trial nor appellate counsel could have raised a challenge to Jones' SORNA registration under

*Muhammad*. Furthermore, Jones' reliance on *Torsilieri* is misplaced. *Torsilieri* addressed a facial challenge to his registration, and Jones does not raise such a challenge before this Court. *See Torsilieri*, 232 A.3d at 573-74.

Order vacated in part as to denial of PCRA petition for ineffectiveness claim for prosecutorial misconduct. Order affirmed for all remaining claims. Case remanded for an evidentiary hearing. Jurisdiction relinquished.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 8/16/2024