J-S03007-26

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| ARTUR GENNADYEVIC BABADZHANOV | : | |
| | : | No. 997 MDA 2025 |
| Appellant | : | |

Appeal from the Judgment of Sentence Entered February 14, 2025
In the Court of Common Pleas of Centre County Criminal Division at
No(s): CP-14-CR-0000725-2024

BEFORE: DUBOW, J., BECK, J., and LANE, J.

MEMORANDUM BY DUBOW, J.:                    **FILED: MARCH 11, 2026**

Artur Gennadyevic Babadzhanov ("Appellant") appeals from the judgment of sentence entered by the Centre County Court of Common Pleas following his jury convictions of one count each of Driving Under the Influence-General Impairment, 75 Pa.C.S. § 3802(a)(1) ("DUI"), his fourth DUI within 10 years, and Obstructing the Administration of Law or Other Governmental Function, 18 Pa.C.S. § 5101 ("Obstruction").[1] He challenges the sufficiency and weight of the evidence, certain evidentiary rulings, and the discretionary aspects of his sentence. After careful review, we affirm.

We glean the factual and procedural history from the certified record, including the trial court's Pa.R.A.P. 1925(a) opinion. On May 29, 2024, at

---

[1] Appellant pled guilty to Driving Without a License, 75 Pa.C.S. § 1501(a).

approximately 9:15 AM, Appellant was driving slowly in the Borough of Bellefonte when he stopped in a travel lane on High Street and asked Mark Brooks, a road crew worker, where he could find the nearest bar, telling him he had just driven in from Michigan. Mr. Brooks immediately smelled a strong odor of alcohol, and after giving Appellant directions, he noticed an open beer bottle in the front seat's cupholder. He watched as Appellant drove slowly straight through the nearest intersection, rather than turn right as Mr. Brooks had suggested, make a slow U-turn in the middle of High Street, and attempt to park. Concerned that Appellant was intoxicated, Mr. Brooks asked a co-worker to call the police department.

Bellefonte Police Officer Lisa Larkin and Police Chief Bill Witner responded to the call and located Appellant's vehicle stopped in traffic. They initiated a traffic stop and Appellant pulled over. While Officer Larkin was speaking with Appellant, Appellant's vehicle began to move forward slowly several times until she instructed him to turn the car off. He did so and handed the keys to her. When she asked Appellant for his driver's license and the vehicle's insurance card and registration, she noticed a strong smell of alcohol emanating from his car. Appellant handed her two stacks of documents which contained the insurance and registration documents mixed in with other papers. He also handed her a Michigan state identification card. Officer Larkin asked Appellant if he had been drinking, which he denied. She then asked Appellant to step out of the car and remove his sunglasses, which revealed

red and glassy eyes. She also noted that his speech was slow and "thick-tongued." N.T. Trial, 1/3/25, at 99. Chief Witmer also detected a strong odor of alcohol emanating from Appellant as they spoke on the sidewalk and believed Appellant to be intoxicated. Appellant refused to perform field sobriety tests, stating "they're unfair." *Id.* at 95. After both Officer Larkin and Chief Witmer spoke with Mr. Brooks, they concluded that Appellant was incapable of safely driving due to alcohol intoxication. Officer Larkin arrested Appellant and she and Chief Witmer transported him to the hospital.

At the hospital, Appellant refused to allow medical personnel to draw his blood. The police officers then transported Appellant to the police station so Officer Larkin could prepare a search warrant to obtain Appellant's blood sample. They placed Appellant in a holding cell. At one point, Officer Witmer escorted Appellant to the restroom and returned him to the holding cell but a few minutes later, Officer Larkin heard Appellant urinating on the floor of the cell and saw him pulling down his pants to squat. When Officer Larkin asked what he was doing, Appellant indicated he needed to defecate. Chief Witmer then escorted him back to the restroom.

While Officer Larkin was preparing the search warrant, she learned that when the tow truck driver opened the driver's side of Appellant's vehicle, beer poured out of the door's pocket. Officer Larkin drafted the search warrant, and she, Chief Witmer, and Appellant drove to the magistrate judge's chambers. While Officer Larkin met with the judge, Chief Witmer and Appellant remained

in the police vehicle where Chief Larkin explained the purpose of the search warrant and the possibility that Appellant's failure to comply with the warrant could result in an obstruction charge. The judge signed the search warrant and Officer Larken, Chief Witmer, and Appellant returned to the hospital.

Once at the hospital, Chief Witmer and Officer Larkin explained that they had a search warrant for his blood and again informed Appellant that his refusal to comply could result in a charge of obstruction. Appellant, who had become agitated, denied that they had a warrant. Chief Witner showed Appellant the search warrant and Appellant again refused to allow the blood draw. Officer Larkin then showed and read to Appellant a hospital form entitled Request to Sample for Police Purposes at which point Appellant became belligerent and shouted vulgar and derogatory remarks at her. As a result of Appellant's refusal to comply with the search warrant and his belligerence, the officers were unable to obtain a blood sample from which to determine Appellant's blood alcohol content. The officers' body-worn video/audio cameras recorded their interactions with Appellant.

The next day, Officer Larkin obtained a second search warrant for Appellant's vehicle based on the information Mr. Brooks had given her about the open container and her experience that people driving with open containers attempt to hide them in their vehicles when stopped by police officers. In executing the search warrant, Officer Larkin observed and smelled alcohol in the driver's-side door pocket. She also found an empty Stella Artois

Bottle in the door pocket, a full beer bottle behind the driver's seat hidden under clothing, and a grocery bag holding a cardboard six-pack container that held one additional full bottle of beer.

The Commonwealth charged Appellant with the above charges. He filed a motion *in limine* to preclude evidence of his refusal to submit to blood testing, specifically, the video and audio recordings from the officer-worn body cameras. On December 24, 2024, the court held a hearing, reviewed the footage from police-worn body cameras, and denied Appellant's motion *in limine*.

On January 3, 2025, Appellant proceeded to a jury trial at which the Commonwealth presented testimony from Officer Larkin, Chief Witmer, and Mark Brooks. The jury also reviewed portions of the audio/video recordings obtained by the officers' body-worn cameras. Appellant presented no evidence. The jury found him guilty of the above charges. The court ordered a pre-sentence investigation.

On February 14, 2025, the court sentenced Appellant to 26 months' to 10 years' incarceration on the DUI conviction, explaining why it sentenced Appellant to the top end of the standard guideline's minimum range. The court imposed a concurrent term of 18 months' probation for Obstruction.[2] Appellant filed a post-sentence motion.

---

[2] Appellant's Driving Without a License conviction resulted in the imposition of a $200.00 fine.

Following the denial of his post-sentence motion, Appellant filed this timely appeal. Both he and the trial court complied with Pa.R.A.P. 1925.

Appellant raises the following issues for our review:

1. Whether the trial court erred in denying [Appellant's] Motion *in Limine* to preclude evidence of a chemical test refusal following the service of a search warrant.

2. Whether the trial court erred in denying Appellant's Motion *in Limine* to preclude audio evidence from body-worn camera videos.

3. Whether there was sufficient evidence to support the guilty verdicts of [DUI] and [Obstruction].

4. Whether the guilty verdicts of [DUI] and [Obstruction] were against the weight of the evidence.

5. Whether the [c]ourt's sentence[] imposed on February 14, 2025, was excessive under the circumstances of the case.

Appellant's Br. at 11-12.

**Motion in Limine**

Appellant's first two issues pertain to the denial of his motion *in limine*. In his first issue, Appellant contends that the trial court erred in denying his motion *in limine* in which he sought to preclude the Commonwealth from presenting evidence obtained from the body-worn cameras of Appellant's interactions with police "following the service of a search warrant." *Id*. at 25. He argues, without citation to the certified record, that the recorded evidence of his refusal to submit to the blood draw should have been excluded because Chief Witmer "flashed the search warrant in front of Appellant for mere seconds," an action Appellant contends violated Pa.R.Crim.P. 208(a). *Id.* at

26. He argues that "[t]he failure to serve the warrant deprived Appellant of his right to understand the basis for the search of his body before compliance was demanded." *Id*.

The decision to admit or preclude evidence lies within the trial court's discretion. ***Commonwealth v. Zugay***, 745 A.2d 639, 644-45 (Pa. Super. 2000). Thus, we review the denial of a motion *in limine* that sought the preclusion of evidence for an abuse of discretion. ***Id.***

The Vehicle Code provides that when a defendant is charged with driving while intoxicated under Section 3802, "the fact that the defendant refused to submit to chemical testing as required by subsection (a) may be introduced in evidence along with other testimony concerning the circumstances of the refusal." 75 Pa.C.S. § 1547(e).

Appellant alleges a violation of Rule 208(a) as the basis for the court's abuse of discretion. That rule provides the following:

> A law enforcement officer, upon taking property or person pursuant to a search warrant, shall leave with the person from whom or from whose premises the property or person was taken a copy of the warrant and affidavit in support thereof, and a receipt for the property seized. A copy of the warrant and affidavit must be left whether or not any property or person is seized.

Pa.R.Crim.P. 208(a).

In its Rule 1925(a) opinion, the trial court addressed Appellant's argument and concluded that he "failed to establish any substantial prejudice resulting from the manner in which Larkin or Witmer presented the warrant to him." Tr. Ct. Op., 9/3/25, at 9. The court noted that Officer Larkin and

Chief Witmer "repeatedly informed [Appellant] that they had a lawfully issued search warrant for his blood" and Appellant's "subsequent refusals indicated an awareness of the lawful order, not a misunderstanding caused by improper service." *Id*.

Based on our review, we conclude that the court did not abuse its discretion in denying the motion *in limine* based on Rule 208. Rule 208 requires only that investigators leave a copy of the search warrant with the targeted individual after its execution, regardless of whether the search results in the seizure of evidence. Appellant does not argue that Chief Witmer failed to leave a copy of the warrant with him. Moreover, considering the circumstances leading up to Chief Witmer showing Appellant the warrant, including Appellant's first refusal to allow the blood draw and multiple explanations from both Officer Larkin and Chief Witmer of why the search warrant was required and the consequences of Appellant's failure to comply, Appellant's bald assertion that he was "deprived . . . of his right to understand the basis for the search of his body before compliance was demanded" is, at best, without merit. *See* N.T. Trial, 1/3/25, at 192 (Chief Witmer); 115-116 (Officer Larkin).

Appellant next argues that the court "should have also invalidated the search warrant" because the Commonwealth failed to demonstrate good cause for failing to present the search warrant within two hours of the vehicle stop as required by 75 Pa.C.S. § 3802(a)(2). Appellant's Br. at 27. He contends, without citation to the record, that he remained in custody "for multiple hours,

with the only justification being the drafting of a straightforward search warrant," and asserts, without citation to supporting authority, that "[r]outine administrative delay does not constitute 'good cause' under 75 Pa.C.S. § 3802(g)." *Id*.

As a first matter, the Commonwealth did not charge, and Appellant was not convicted, of violating Section 3802(a)(2); thus, any argument referencing that section of the Vehicle Code is irrelevant to this appeal. *See Commonwealth v. Segida*, 985 A.2d 871, 878-79 (Pa. 2009) (distinguishing section 3802(a)(2) from section 3802(a)(1)). Additionally, Appellant does not support his request to "invalidate the search warrant" with citations to any case law or any legal analysis pertaining to the search warrant itself. *See* Pa.R.A.P. 2119 (listing briefing requirements), 2101 (requiring conformance with briefing rules to avoid dismissal). Finally, as the trial court aptly noted, the delay following the traffic stop resulted from Appellant's refusal at the first hospital visit to consent to the blood draw which then required his transport to the police department, following which "officers made efforts to obtain the search warrant in a reasonable time, and did eventually receive said warrant[.]" This delay "did not bar the Commonwealth from presenting evidence of [Appellant's] refusal to provide a blood sample." Tr. Ct. Op., at 9/3/25, at 10. *See* 75 Pa.C.S. 1574(e). Appellant's first issue warrants no relief.

•

In his second issue, Appellant argues that the court abused its discretion in denying his motion *in limine* because the numerous vulgar and derogatory comments captured on video/audio tape that he made at the hospital and to Officer Larkin and Chief Witmer were highly prejudicial and their admission outweighed their probative value. Appellant's Br. at 28-32. Appellant has waived this argument.

Appellant fails to cite to the certified record or to legal authority to support his argument. **See** Pa.R.A.P. 2119(a), (c) (requiring discussion and citation of authorities pertinent to the arguments set forth in the brief and citation to the record); Pa.R.A.P. 2101 (requiring conformance with the briefing rules). These defects substantially hamper our review and we, thus, conclude that Appellant has waived this argument for our review.[3]

**Sufficiency of the Evidence**

In his third issue, Appellant challenges the sufficiency of the evidence underlying his DUI and Obstruction convictions. Appellant's Br. at 32-38. "A claim challenging the sufficiency of the evidence is a question of law." **Commonwealth v. Widmer**, 744 A.2d 745, 751 (Pa. 2000). "[O]ur standard of review is *de novo*[,] and our scope of review is plenary." **Commonwealth v. Hutchinson**, 164 A.3d 494, 497 (Pa. Super. 2017) (citation omitted).

---

[3] Moreover, we agree with the trial court's conclusion that Appellant's behavior, including his vulgar remarks, were part of the totality of the circumstances demonstrating that Appellant's judgment and behavior was impaired so as to be unsafe to drive. **See** Tr. Ct. Op. at 10-13. We, thus, conclude the court properly exercised its discretion in denying Appellant's motion *in limine*.

"When reviewing a challenge to the sufficiency of the evidence, we must determine if the Commonwealth established beyond a reasonable doubt each of the elements of the offense, considering the entire trial record and all of the evidence received, and drawing all reasonable inferences from the evidence in favor of the Commonwealth as the verdict-winner. The Commonwealth may sustain its burden of proof by wholly circumstantial evidence." *Segida*, 985 A.2d at 880 (citations omitted).

### DUI

The jury convicted Appellant of violating Section 3802(a)(1) of the Vehicle Code, which provides that "[a]n individual may not drive, operate or be in actual physical control of the movement of a vehicle after imbibing a sufficient amount of alcohol such that the individual is rendered incapable of safely driving, operating or being in actual physical control of the movement of the vehicle." 75 Pa.C.S. § 3802(a)(1); *see also Segida*, 985 A.2d at 879 (interpreting Section 3802(a)(1) as "proscrib[ing] driving only when an individual is incapable of doing so safely as a result of intoxication"). Appellant does not dispute he was driving when the police officers conducted the traffic stop, the first element of the statute.

To establish the second element of Section 3802(a)(1), the Commonwealth must establish that alcohol has substantially impaired "the normal physical and mental faculties required to safely operate the vehicle." *Commonwealth v. Palmer*, 751 A.2d 223, 228 (Pa. Super. 2000). "Substantial impairment, in this context, means a diminution or enfeeblement

- 11 -

in the ability to exercise judgment, to deliberate or to react prudently to changing circumstances and conditions." ***Id.***

Appellant avers that "the Commonwealth could not prove the second element of the crime beyond a reasonable doubt because it could not rule out alternative explanations to Appellant's apparent symptoms of impairment nor could it show that Appellant had a blood alcohol level above the legal limit." Appellant's Br. at 35. He contends that without any field sobriety or chemical tests, "the Commonwealth's case rested solely on the arresting officers' subjective opinions of alleged impairment." ***Id.*** at 36.

By characterizing the arresting officers' testimony as "subjective" and asking this Court to consider the lack of sobriety testing, Appellant ignores our standard of review applicable to sufficiency challenges. Based on our review of the evidence presented at trial, we conclude that the Commonwealth presented sufficient evidence to support the jury's determination that Appellant was guilty of DUI. Mr. Brooks, Officer Larkin, and Chief Witmer each testified that Appellant reeked of alcohol while sitting in his car and standing outside it. ***See*** N.T. Trial, 1/3/25, at 51-72 (Mr. Brooks); 74 – 104 and 151-183 (Officer Larkin); 183-205 (Chief Witmer). In addition, the jury watched portions of the footage recorded by the police officers' body-worn cameras which showed Appellant's increasingly agitated and belligerent behavior, from which the jury could reasonably infer Appellant had consumed alcohol to a point of intoxication that impaired his judgment and his ability to drive safely. Further, the search of Appellant's vehicle revealed alcohol residue in the

driver's side door pocket, in addition to opened and two unopened beer bottles.

The totality of the evidence presented to the jury supports Appellant's DUI conviction. Appellant's argument, that there may be other explanations for his behavior, is not supported by record evidence and, thus, it fails to garner relief.

### Obstruction

Appellant next challenges the sufficiency of the evidence supporting his obstruction conviction. He avers that his refusal to submit to the blood draw after the officers presented the warrant to him was "not affirmative interference but rather was merely passive noncompliance," leaving the officer "free to proceed with the warrant through lawful means." Appellant's Br. at 37. Appellant cites no case law or record evidence to support his argument.[4]

Our crimes code provides that a person will be found guilty of "[o]bstructing administration of law or other governmental function" if the Commonwealth proves that

> he intentionally obstruct[ed], impair[ed] or pervert[ed] the administration of law or other governmental function by force, violence, physical interference or obstacle, breach of official duty, or any other unlawful act, except that this section does not apply to flight by a person charged with crime, refusal to submit to arrest, failure to perform a legal duty other than an official duty,

---

[4] Notwithstanding these deficiencies in Appellant's brief, we decline to find waiver as we address sufficiency challenges as a matter of law under a *de novo* and plenary standard and scope of review. **Widmer**, 744 A.2d at 751; **Hutchinson**, 164 A.3d at 497.

or any other means of avoiding compliance with law without affirmative interference with governmental functions.

18 Pa.C.S. § 5101. Thus, "the crime consists of two elements: 1) an intent to obstruct the administration of law; and 2) an act of 'affirmative interference with governmental functions.'" ***Commonwealth v. Palchanes***, 224 A.3d 58, 60 (Pa. Super. 2019) (citation omitted).

In ***Palchanes***, the appellant refused to submit to a blood draw after police officers presented him with a search warrant, and the Commonwealth charged him with, *inter alia*, obstruction. ***Id.*** at 59. A jury convicted him and this Court affirmed the conviction, agreeing with the Commonwealth that the appellant's "refusal to submit to the lawfully ordered blood draw impeded [the police officer's] investigation of the DUI case and he thus interfered with the administration of law." ***Id.*** at 60.

***Palchanes*** is dispositive here. Appellant's refusal to submit to the blood draw after the police officers presented him with the search warrant interfered with the administration of law. Accordingly, the officers' testimony and the evidence presented to the jury showing his refusal to comply with the search warrant were sufficient to support the obstruction conviction. Appellant's argument, thus, fails to garner relief.

**Weight of the Evidence**

In his fourth issue, Appellant baldly claims that the verdicts were against the weight of the evidence "for the same reasons as articulated above in" his challenge to the sufficiency of the evidence. Appellant's Br. at 39. He then

provides a self-serving narrative of the facts and summarily concludes that "because the guilty verdicts for [DUI] and [obstruction] were so contrary to the weight of the evidence that they shock one's sense of justice, the trial court abused its discretion in denying Appellant's post-sentence motion." *Id.* at 40-41. No relief is warranted.

Initially, we note that "[t]he weight of the evidence is exclusively for the finder of fact who is free to believe all, part, or none of the evidence and to determine the credibility of the witnesses." *Commonwealth v. Champney*, 832 A.2d 403, 408 (Pa. 2003) (citations omitted).

A trial court reviewing a challenge to the weight given the evidence may grant relief only if "the jury's verdict is so contrary to the evidence as to shock one's sense of justice and the award of a new trial is imperative so that right may be given another opportunity to prevail." *Commonwealth v. Clay*, 64 A.3d 1049, 1055 (Pa. 2013) (citation omitted).

The trial court's denial of a weight claim "is the least assailable of its rulings." *Commonwealth v. Diggs*, 949 A.2d 873, 880 (Pa. 2008); *see Commonwealth v. Morgan*, 913 A.2d 906, 909 (Pa. Super. 2006) (stating that because the trial court "is in the best position to view the evidence presented," an appellate court will give that court "the utmost consideration" when reviewing its weight determination). "Where [] the judge who presided at trial ruled on the weight claim below, an appellate court's role is not to consider the underlying question of whether the verdict is against the weight of the evidence." *Commonwealth v. Morales*, 91 A.3d 80, 91 (Pa. 2014)

- 15 -

(citation omitted). This Court is instead limited to evaluating only the trial court's exercise of discretion in denying that claim. *Id.*

"A verdict is not contrary to the weight of the evidence because of a conflict in testimony or because the reviewing court on the same facts might have arrived at a different conclusion than the fact[-]finder." *Id.* (citation omitted). As our Supreme Court has made clear, reversal is only appropriate "where the facts and inferences disclose a palpable abuse of discretion[.]" *Id.* (emphasis omitted).

In the case *sub judice*, the judge who presided at trial ruled on Appellant's post-sentence weight of the evidence claims and concluded they were without merit.

> [Appellant] invites this [c]ourt to reweigh the testimony and substitute its judgment for that of the jury. The jury, as fact-finder, considered all the evidence presented, including the comprehensive observations of civilian witness Brooks and police officers Larkin and Witmer. The jury also considered [Appellant's] demeanor and behavior in video footage, as well as the physical evidence discovered in [Appellant's] vehicle. It was within the jury's purview to assess the credibility of the Commonwealth's witnesses and draw reasonable inferences from their testimony. Given the extensive evidence put forth at trial, [the DUI verdict] is not so contrary to the evidence [as] to shock the judicial conscience.
>
> [    ]
>
> [Likewise, t]he weight of the evidence supports the jury's verdict on obstruction of justice. [Appellant] refused to provide a blood sample, both initially as well as after Officer Larkin and Chief Witmer presented him with a validly issued search warrant. [Appellant] assert[s] that his refusal was passive and did not constitute "affirmative interference" contradicts established legal precedent. *See Palchanes*, 224 A.3d 58 (Pa. Super. 2019). The jury was entitled to conclude that actively refusing a lawful order,

- 16 -

especially when a warrant has been obtained, constitutes affirmative interference[.] The jury's finding is consistent with the evidence and does not shock the judicial conscience.

Tr. Ct. Op. at 20-21.

Following our careful review of the record and relevant case law, we agree with the trial court's reasoning. Based on the plethora of evidence presented, the verdicts do not shock the conscience of this Court. Appellant has, thus, failed to convince us that the trial court abused its discretion in denying his weight claim.

**Discretionary Aspect of Sentence**

In his final issue, Appellant challenges his standard-range DUI sentence as "excessive under the circumstances," those "circumstances" being "his lack of community ties." Appellant's Br. at 41-42. He acknowledges that "mere assertions of excessiveness . . . are insufficient" to obtain relief in a sentencing challenge but nonetheless opines that "the trial court fashioned a sentence that was irrational and unduly punitive" when it imposed "the harshest possible minimum sentence within the standard range[, *i.e.*, 26 months' incarceration] along with a maximum [statutory] sentence of ten years." ***Id.***

An appellant raising a challenge to the discretionary aspect of his sentence is not entitled to review as of right; rather, a challenge in this regard is properly viewed as a petition for allowance of appeal. 42 Pa.C.S. § 9781(b); ***Commonwealth v. Tuladziecki***, 522 A.2d 17, 18-19 (Pa. 1987); ***Commonwealth v. Buterbaugh***, 91 A.3d 1247, 1265-66 (Pa. Super. 2014) (*en banc*).

In order to obtain this Court's review, an appellant challenging the discretionary aspects of his sentence must comply with the following requirements: (1) file a timely notice of appeal; (2) preserve the issue at sentencing or in a motion to reconsider and modify sentence; (3) include within his brief a concise statement of the reasons relied upon for allowance of appeal as required by Pa.R.A.P. 2119(f); and (4) raise a substantial question that the sentence is inappropriate under the Sentencing Code. *Commonwealth v. Carrillo-Diaz*, 64 A.3d 722, 725 (Pa. Super. 2013).

Rule 2119(f) requires an appellant who challenges the discretionary aspects of a sentence in a criminal matter to "set forth in a separate section of the brief a concise statement of the reasons relied upon for allowance of appeal with respect to the discretionary aspects of a sentence." Pa.R.A.P. 2119(f). The Rule 2119(f) statement must "immediately precede the argument on the merits with respect to the discretionary aspects of the sentence." *Id.* If an appellant fails to include a Rule 2119(f) statement and the Commonwealth objects, the appellant has waived his discretionary sentencing claims. *See Commonwealth v. Griffin*, 149 A.3d 349, 353 (Pa. Super. 2016).

Here, Appellant complied with the first two requirements. Although he did not include a Rule 2119(f) statement, the Commonwealth has not objected. We, thus, address whether Appellant has raised a substantial question.

We determine on a case-by-case basis whether an appellant has raised a substantial question regarding discretionary sentencing. ***Commonwealth v. Moury***, 992 A.2d 162, 170 (Pa. Super. 2010). "A substantial question exists only when the appellant advances a colorable argument that the sentencing judge's actions were either: (1) inconsistent with a specific provision of the Sentencing Code; or (2) contrary to the fundamental norms which underlie the sentencing process." ***Id.*** (citation and quotation marks omitted).

Appellant acknowledges that his sentence falls within the standard range of the sentencing guidelines. He challenges his sentence based only on his assertion that the trial court "fashioned a sentence that was irrational and unduly punitive" because he "has no ties whatsoever to the Commonwealth of Pennsylvania." Appellant's Br. at 42. He maintains that his "lack of community ties significantly reduces concerns regarding deterrence and rehabilitation [and] there is likely no future conduct in Pennsylvania to deter." ***Id***. He also avers that "there would be greater opportunity for reform elsewhere[.]" ***Id***.

Appellant presents no "colorable argument" that the sentencing court's actions were inconsistent with the sentencing code or contrary to the fundamental norms underlying the sentencing process. Accordingly, Appellant has failed to raise a substantial question.

**Conclusion**

In sum, the trial court did not abuse its discretion in denying Appellant's motion *in limine* and his post-sentence motion. Based on our review, we conclude sufficient evidence supports the DUI and Obstruction convictions. Finally, Appellant fails to satisfy the requirements necessary to invoke our jurisdiction to address the merits of his challenge to his standard range sentence imposed for his fourth DUI conviction. We, thus, affirm Appellant's judgment of sentence.

Judgment of sentence affirmed.


Judgment Entered.


Benjamin D. Kohler, Esq.
Prothonotary


Date: 3/11/2026